# Alabama Gold Life Insurance Co. *v.* Thomas.

### *Action on Policy of Life Insurance.*

1. *Forfeiture of policy on non-payment of premiums or interest; indorsement as to paid-up value.*—An indorsement on a policy of life-insurance which states that, " in consideration of the payment on the within policy of four annual premiums, less note for $169.20, given for balance due on

[Alabama Gold Life Insurance Co. v. Thomas.]

premium loans to November 11th, 1872, said policy· is entitled at maturity to a paid-up value of four-tenths of the sum insured, subject to deduction of note above described, interest upon which is payable annually in advance," does not show the entire contract between the parties, but is to be construed in connection with the stipulations contained in the policy itself; and one of these stipulations being that, " in case the assured shall not pay the said premiums at or before the date mentioned for the payment thereof, and the interest annually on all notes or credits on account of premiums, until the same are fully paid up, then this policy shall be void," while another stipulation was that, "when this policy shall cease or become void, all payments made thereon shall be forfeited to said company,"—neither the note nor the interest thereon being paid, the policy is forfeited.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by Mrs. Sallie A. Thomas, the widow of Eugene A. Thomas, deceased, against the appellant, a domestic corporation engaged in the business of life-insurance; and was founded on two policies of insurance which said Eugene A. Thomas had effected on his own life, and which were regularly assigned by him to the plaintiff. The policies were dated, respectively, on the 17th February, and the 11th November, 1869, and each was $5,000; but the plaintiff claimed only $2,500 on one, and $2,000 on the other, as the paid-up value of each, evidenced by the defendant's indorsement thereon. The indorsement is copied in the opinion of the court, and the material stipulations contained in the policies are there stated. The defendant insisted that the indorsement was to be construed in connection with the policy itself, as showing the entire contract between the parties; and that the policy was forfeited by the non-payment of both principal and interest on the note described in the indorsement. The court below, in its rulings on the pleadings, construed the indorsement as a new contract; and charged the jury, on all the evidence adduced, there being no conflict, that they must find for the plaintiff, if they believed the evidence, for the paid-up value specified in the indorsement, after deducting the amount due on the note, with interest computed with annual rests. The defendant excepted to this charge, and also to the refusal of a general charge asked in its favor; and these rulings are now assigned as error, together with the rulings on pleadings adverse to the defendant. The assured died on the 24th March, 1880, and the action was commenced on the 11th July, 1882.

OVERALL & BESTOR, for appellant, cited *Patch v. Phœnix Mutual Ins. Co.*, 44 Vermont, 481; *Anderson v. St. Louis Mutual Life Ins. Co.*, 3 Big. Life & Accident Ins. Cases, 527; *Knickerbocker Life Ins. Co. v. Dietz*, 52 Md. 16; *Russum v. St. Louis Mutual Life Ins. Co.*, 5 Big. L. & A. Cases, 243;

*Knickerbocker Life Ins. Co. v. Harlan*, 56 Miss. 512; *Smith v. St. Louis Mutual Life Ins. Co.*, 2 Tenn. Ch. 742; *Baker v. Union Mutual Life Ins. Co.*, 43 N. Y. 283; *Pitt v. Berkshire Life Ins. Co.*, 100 Mass. 504; *Attorney General v. No. Amer. Ins. Co.*, 82 N. Y. 190.

FAITH & CLOUD, and TOULMIN, TAYLOR & PRINCE, *contra.* The original policies were forfeited by the non-payment of premiums, and ceased to have any value whatever as existing contracts of insurance; but, on their surrender after forfeiture, as therein expressly provided, the assured was entitled to demand a "new policy," for the value acquired by the payments made on the old. These "new policies" were shown by the indorsements made on the old; and they are made certain and definite by the reference to the old policies.—1 Phil. Ins. 8; 5 Ind. 96; 16 Pick. 227; 19 Ala. 377. But the indorsements were not intended to revive the policies as contracts, nor can such operation be given to them. The conditions of the old policies might have been incorporated in the new, but they were not; the only stipulation being that the amount to be paid, as therein stated, was subject to deduction on account of the amount due on the note, with interest thereon, computed annually in advance. This was a fair and valid contract, which the courts will sustain and enforce. No more forfeitures were to be incurred; but, as the assured grew older, the liability of the insurer diminished by the annual interest on the note; and if the assured had lived twenty-five years, the insurer would have owed nothing, the note and accrued interest thereon being equal to the sum insured.—*St. Louis Mutual Life Ins. Co. v. Grigsby*, 4 Big. Ins. Cases, 633; *Ohde v. N. W. Mutual Life Ins. Co.*, 5 Big. Ins. Cases, 145; *Insurance Co. v. Dutcher*, 5 Otto, 269; 14 Bush, Ky. 51; 4 Mo. App. 386; 30 Ohio St. 240; 63 Geo. 199; 82 N. Y. 543; 127 Mass. 153; 58 Ala. 558; 5 Jones, N. C. 558; 39 Wisc. 397. A policy of insurance is to be construed most strongly against the insurer, especially clauses providing for a forfeiture.—39 Wisc. 397; 58 Ala. 476; 101 Mass. 558; 5 Bigelow, 558; 30 Ohio St. 240.

SOMERVILLE, J.—The present action is brought against the appellant insurance company, on two policies of life-insurance, the original amounts of which were severally the sum of five thousand dollars each. These policies were taken out on the life of Eugene A. Thomas, the husband of the plaintiff, and were by him assigned to her in due form, by consent of the company. The assured, upon surrendering the original policies within the prescribed time, after they had ceased in consequence of the non-payment of premiums, procured certain *indorse-*

*ments in writing* upon these policies, entitling the holder, at maturity, to a paid-up value proportioned to the amount of premiums which had been paid.

The whole question involved in this case, in our judgment, is, whether these indorsements are to be construed as separate and independent contracts of insurance, disembarrassed from the conditions of the original policies, or whether the indorsements and policies are to be construed together as constituting but one contract.

The first indorsement made on one of these policies is as follows, being dated at the office of the company, on November 29th, 1873: "$2,000. In consideration of the payment, on the within policy, of four annual premiums, less note for $169.20, given for balance due on premium loans to November 11th, 1872, *said policy is entitled, at maturity*, to a paid-up value of *four-tenths* of the sum insured, subject to deduction of note above described, *interest upon which is payable annually in advance;*" signed, " *T. N. Fowler*, secretary."

The indorsement on the other policy is in substance, though not in exact language, the same. The promissory note above alluded to is signed by the assured, and purports to be "for *part premium* due and payable on policy No. 697," being the one on which the indorsement was made. A similar note was given for $203.84, being for part of the unpaid premium on the other policy, which is described as policy No. 165. The terms and conditions of the policies are precisely the same.

It is admitted that these outstanding notes for unpaid premiums have not been discharged, and that *no interest has ever been paid on them*, either by the plaintiff, or by the assured.

It is insisted that, under the express conditions of the policies, the failure to pay the interest on these notes operated as a forfeiture of the policies, rendering them void. This is claimed by the company, under the provisions of the following clause: "Or, in case the said Eugene A. Thomas *shall not pay* the said premiums, on or before the date mentioned for the payment thereof, and *the interest annually on all notes* or credits *on account of premiums, until the same are fully paid up, then, and in every such case, this policy shall be void.*" Another clause provides, further, that "in every case where this policy shall cease, or be or become void, all payments made thereon shall be *forfeited* to said company, and also all profits and dividends accruing therefrom."

These clauses are too plain in meaning to admit of much room for construction. They incorporate a clear agreement between the contracting parties. that the policies shall be *void* in the event of a failure on the part of assured, or some one for

him, to make punctual payment of either the *premiums*, or of the *interest on all notes given on account of premiums.*

It is too late, at this day, to raise any question as to the legal validity of such a contract. To one who understands anything of the principles upon which the business of life-insurance is conducted, it is obvious that the punctual payment of premiums is of the very essence of the contract. The calculations of insurance actuaries, fixing the rates of insurance, are based upon the theory of prompt payment, so as to afford opportunity for such re-investment as to reap the fruits of compound interest upon the company's moneyed capital. Laxity in the enforcement of punctual payments might, and no doubt would frequently, lead to ultimate, if not speedy financial ruin. Stipulations, therefore, incorporated in insurance-policies, making such payments conditions precedent to the continued liability of the insurer, are generally maintained as valid by the courts. *Patch v. Phœnix Mut. Ins. Co.*, 44 Vt. 481; *Anderson v. St. Louis Mut. Life Ins. Co.*, 5 Big. Life & Accident Rep. 527; *Knickerbocker Life Ins. Co. v. Deitz*, 52 Md. 16; and other cases cited on brief of appellant's counsel.

It is clear to us, that the indorsements upon the policies can not be construed to embody the entire agreement of the contracting parties, freed of the conditions incorporated in the original policies. The indorsements and the policies are to be construed together, as a whole, the policies being continued in force to the extent specified in the indorsements. It is the same as if new policies, with the same conditions, had been re-issued for the reduced amount, with the stipulation that the interest on the deferred premium should be paid annually in advance, subject to the penalties provided in the event of failure.

If we possessed the power to construe away any one of the conditions or stipulations of these policies, upon the theory of natural equity, or of hardship, we could as well do the same with all others. The insured is prohibited, among other things, from residing or travelling within certain degrees of latitude, from engaging in certain extra-hazardous occupations, or taking his life by his own hand, or losing it in violation of law. These are made expressly conditions precedent to recovery from the insurers, or of their continued liability. It can not be supposed that these conditions have been expunged by omitting to repeat them in the indorsement. The policy, with all its terms, is evidently kept in force, and no sufficient reason exists why one of these conditions should be omitted rather than another, or that the courts should enforce some, and relax the operation of others. The assured may have made a hard or imprudent contract, in agreeing to forfeit these policies upon his failure to

[Dauphin & LaFayette Streets Railway Co. v. Kennerly.]

promptly pay the interest on these notes annually in advance. But courts have no power to substitute wise for unwise agreements, nor to revise contracts so as to eliminate their hardship through the process of judicial construction. They can only interpret the contracts of parties as they have made them, and enforce them according to obvious intention legally expressed, so long, at least, as they offend no law, or violate no principle of public policy.

It is manifest that the rulings of the Circuit Court are entirely opposed to these views. The general charge requested by appellant should have been given, instructing the jury, if they believed the evidence, to find a verdict for the defendant.

Reversed and remanded.