# Southern Building & Loan Association v. Anniston Loan & Trust Co.

*Bill in Equity to redeem from a Mortgage.*

1. *Building and loan association; forfeiture of borrower's stock.*—Where a building and loan association, duly incorporated under the laws of the State (Code, §§ 1553–1556), has, in the exercise of its charter powers, adopted by-laws providing for the forfeiture of the stock of a borrowing shareholder, if he fails for three months to pay the interest or premiums on his loan, or the regular monthly instalments due upon his stock, if a borrower, to secure a loan from such association, executes a mortgage on real estate and assigns his stock as collateral security, and stipulates that these by-laws should be a part of the loan contract, the said association has the right to declare forfeited the stock subscribed for by such borrower, upon default by him for three months or more in the payment of his dues; and upon such forfeiture the shareholder is not entitled to have the mortgage debt abated to the extent of the aggregate of the payments made by him on his stock subscription prior to his default.

APPEAL from the City Court of Anniston, in Equity.

Heard before the Hon. JAMES W. LAPSLEY.

The original bill in this case was filed by the Anniston Loan & Trust Company against the Southern Building & Loan Association, Isaac Linsky, and O. H. Parker, as assignee of Isaac Linsky; and sought to redeem from a mortgage which had been given by I. Linsky to the Southern Building & Loan Association.

The defendant, the Southern Building & Loan Association, is a building and loan association organized under the laws of the State of Alabama in accordance with the provisions of sections 1553 to 1556, inclusive, of the Code of 1886. Isaac Linsky became a member of said association in accordance with its charter and by-laws, for the purpose of securing a loan of two thousand dollars which

he subsequently negotiated, and, in addition to transferring his shares of stock in said association as collateral security, executed a mortgage upon a three-story brick building in the city of Anniston, to secure the repayment of the loan. Afterwards said Isaac Linsky executed a second mortgage upon the same brick building to the Anniston Loan & Trust Company to secure an indebtedness of twenty-five hundred dollars. Said Isaac Linsky continued to meet the instalments of interest, premiums and payments upon his subscription to the stock of said association until October 1, 1891, at which time these several payments aggregated a large amount. He afterwards failed in business, and made an assignment for the benefit of his creditors to O. H. Parker, as assignee.

The junior mortgagee, the Anniston Loan & Trust Company, offered to pay to the Southern Building & Loan Association, the senior mortgagee, the amount of Linsky's mortgage indebtedness, after deducting therefrom the aggregate of the payments made by said Isaac Linsky on the stock subscribed for and held by him; but this offer was refused. Said O. H. Parker, as assignee of said Isaac Linsky, made a similar offer to said association, which was in like manner refused. The Anniston Loan & Trust Company, the junior mortgagee, then filed the present bill in the city court of Anniston on September 21, 1892, against said Southern Building & Loan Association, O. H. Parker, assignee, and Isaac Linsky, and prayed to be allowed to redeem from said mortgage held by said association, offering to pay whatever amount is ascertained to be due thereon, and for the foreclosure of complainant's mortgage. O. H. Parker, as assignee, filed his cross bill on May 25, 1893, against the Anniston Loan & Trust Company, the Southern Building & Loan Association, and Isaac Linsky, in which he averred the assignment of said Linsky to him for the benefit of his creditors, his offer to redeem from the said building and loan association, which was refused; and prayed that he be allowed to redeem from the mortgage to the said association, by paying the amount ascertained to be due thereon by an accounting, and also to redeem from the mortgage to the said Anniston Loan & Trust Company, by paying such amount as was ascertained to be due to it.

The cause was submitted upon an agreed statement of facts, the substance of which is sufficiently stated above and in the opinion of the court.   Upon the final submission the court decreed that the complainant in the cross bill, O. H. Parker, as assignee, be entitled to redeem upon payment of the amount declared in said decree to be due the Southern Building & Loan Association and the Anniston Loan & Trust Company, upon their respective mortgages, within five days from the date of the decree ; and that upon the failure of the said O. H. Parker to redeem within the time specified that the Anniston Loan & Trust Company, the complainant in the original bill, be entitled to redeem ; the amount to be paid in each instance to the Southern Building & Loan Association, being the amount of the mortgage debt after giving credit for the payments made by said Linsky upon his stock subscribed.

The Southern Building & Loan Association prosecute the present appeal, and assign as error this final decree.

LAWRENCE COOPER and A. P. AGEE, for appellant.—
(1.) Linsky and the association could enter into the contract providing for the forfeiture of his shares of stock upon his making default for more than three months in the payment of his instalments, interest and premiums. § 1556, sub-div. 6, Code of Ala. ; *Freeman v. Building Asso.*, 114 Ill. 182 ; *Williams v. Glover*, 66 Ala. 189 ; *Mobile B. & L. Asso. v. Robertson*, 65 Ala. 386 ; Endlich on Building Asso., § 278.   (2.) A by-law providing for such a forfeiture is binding on him and his assignee after he has assented to the same and made it a part of his contract with the association.   (3.) If such by-law was binding on him, then a second mortgagee could have no more rights as to a redemption than the mortgagor himself would have if he desired to pay off the mortgage indebtedness.   (4.) The forfeiture of the stock was authorized by statute, by the by-laws, and by contract, and the city court should have decreed that the Anniston Loan & Trust Co. or O. H. Parker, assignee, in order to redeem, should pay to the association the sum of $2,000 together with interest at the legal rate from the default in payment of interest and premium to the time of the decree in the city court.—§ 1556 sub-div. 4, 6 and 12 of the Code of Ala. ; Endlich on Building Associations, §§

[Southern Building & Loan Association v. Anniston Loan & Trust Co.]

9, 127, 180 ; *Freeman v. Building Asso.*, 114 Ill. 182 ; 2 Story's Eq. Jur., §§ 1325–1326 ; 2 Pomeroy's Eq. Jur., §§ 457–458 ; *Kelly v. B. & L. Asso.*, 64 Ala. 503. (5.) If said Linsky and the association could not enter into the contract into which they did enter providing for the forfeiture, then the court should declare the stock not forfeited, and decree that the said association sell the said stock, deposited as collateral, to the highest bidder, and apply the proceeds to the mortgage indebtedness to the association, and look to the real estate security for the remainder of such indebtedness, or allow the second mortgagee to redeem from the association by paying the balance due after applying the proceeds from the stock. Endlich on Building Asso., § 460; *Red Bank Asso. v Patterson*, 3 C. E. Gr. (N. J.) 223 ; *Reilly v. Mayor*, 1 Beas. (N. J.) 55 ; *Washington v. Beaghen*, 27 N. J. Eq. 99 ; *Massey v. B. Asso.*, 22 Kas. 638. (6.) If the second mortgagee or O. H. Parker, assignee, were entitled to any credit whatever for the amount paid by Linksy on his instalments, it could have been no more than the amount paid into the loan fund, and not the amount paid into the expense fund. All members must contribute *pro rata* to the expenses of the association.—Endlich on Building Asso., §§ 99, 105; *McGrath v. Hamilton Sav. & Loan. Asso.*, 44 Pa. St. 383 ; *Patterson v. Albany B. & L. Asso.*, 63 Ga. 373. (7.) The association should have been allowed interest to the time of the decree and not merely to the time of the filing of the bill. There was no legal tender.—Code of Ala., § 2685 ; *Parks v. Wiley*, 67 Ala. 310 ; *Alexander v. Caldwell*, 61 Ala. 543 ; *Caldwell v. Smith*, 77 Ala. 157.

Knox, Bowie & Pelham, *contra.*—A forfeiture on the part of the borrower does not mean a forfeiture of the payments made by him on account of the subscription to the stock, or the instalments upon the loans secured to the company.—Endlich on Building Asso., §§ 99, 127, 165 ; *Robertson v. Homestead Asso.*, 69 Amer. Dec. 162. It is of little consequence what form the transaction has assumed, whether the borrowing shareholder be regarded as having made his payments directly upon his loan, or upon subscriptions to shares of stock in the company which he received and subscribed for in order to qualify him to make the loan. When he makes default he is

entitled, as a matter of right, to be credited with the value of his stock, or the aggregate amount of payments made by him on account of the stock or loan, as the case may be. This, we understand, to be the rule in this State, as well as other States.—*Mobile B. & L. Asso. v. Robertson*, 65 Ala. 382; *Falls v. United States B. Co.*, 97 Ala. 417, 13 So. Rep. 25; *Robertson v. Homestead Asso.*, 69 Amer. Dec. 162; Endlich on Building Asso., 453; 2 Amer. & Eng. Encyc. of Law, 639.

HARALSON, J.—The main question in this case, as stated by the appellant, is the right and power of the Southern Building and Loan Association to declare forfeited the shares of a borrowing member. Or, as stated by counsel for appellees, "The cause was submitted in the court below upon an agreed state of facts, and the single point of dispute turns upon the question of the right of the Southern Building and Loan Association to forfeit the shares of stock held by it as collateral, and the refusal of said association to credit its mortgage with the value of the stock, or the aggregate amount of the payments made by Isaac Linsky on account of said stock, or on account of said loan. There is no dispute as to what payments were made, but the Southern Building and Loan Association plants itself upon the proposition, that it is entitled to recover the full amount of the original loan with interest, without any abatement for the value of the stock, or the aggregate amount of payments made by Isaac Linsky during the life of the loan. The learned court below held that this construction was inequitable and not within the contemplation of the parties at the time the contract was made, and that the junior mortgagee and the assignee for the benefit of creditors were entitled to redeem upon paying the amount of the mortgage loan, after deducting the value of the stock, or the aggregate amount of the payments made by said Isaac Linsky prior to making default." We thus have the issue plainly and sharply defined, and the parties treat the value of the stock, as merely the aggregate of all the payments which have been made upon it, thus following the rule which is laid down in the books for the ascertainment of its value—Endlich on Building Asso., §§ 455, 457, and authorities there cited.

This question has given rise to some confusion in the

decisions of courts. In North Carolina, the transaction has been treated upon the basis of an actual loan of money, and the aggregate amount of payments upon stock as partial payments on the loan by the borrower. *Overby v. The Fayetteville B. & L. Asso.*, 81 N. C. 56; *Hoskins v. Mich. B. & L. Asso.*, 84 N. C. 838. And the earlier Pennsylvania cases, previously to that of the *North Am. Building Asso. v. Sutton*, 35 Pa. St. 463, maintain the same view of the question. Commenting upon these decisions, Mr. Endlich says that the Supreme Court of Pennsylvania, in *Sutton's case, supra*, for the first time approached an understanding of the nature and dealings between the building association and its members ; that under the rulings in the former cases in that court, upon the theory of partial payments, it followed that each stock payment made by the borrowing member was a *pro tanto* reduction of his mortgage debt, to be deducted with interest from the date of payment ; and he adds : "The fallacy of this doctrine is obvious from the fact that the borrower's standing as a member is not merged in his superadded character of debtor, and that, as a member, he is not entitled to an account of profits made by the society upon his contributions, before the period of its termination (or that of the series to which his stock belongs), whilst the settlement of his liabilities as a borrower is also referred to the winding up of the mutual scheme. It has therefore, become a well recognized doctrine that payments of dues upon stock are not payments to the mortgage debt, and do not, *ipso facto*, work an extinguishment of so much of the mortgage. The fact that the borrower has assigned his shares to the society as collateral security for his debt makes no difference ; for this is a recognition of the distinct standing of the member as a member and as a debtor."—Endlich on Building Associations, § 452. And it is a correct principle, as has been held, that there is no connection established between the stock held by the stockholder and the bond held by the company, such as that payments made on stock are to be treated as payments on the bond, so that one is steadily offset against the other, or the one merges in the other,— a fallacy sometimes indulged, arising from a failure to observe the separate existence of the stock on the one hand and the bond on the other,—the separate

relation borne to the company, on the one side, by its stockholder, and, on the other, by its borrower. The payment on the one is not necessarily a payment on the othhr.—*State Washington Bldg. & Loan Asso. v. Hornbacker*, 42 N. J. L. 635; Endlich Building Asso., § 452. Mr. Freeman, in an extended note to *Robertson v. Homestead Association*, 69 Am. Dec. 163, gives approval to the same principle, citing a long list of cases in support thereof; and the learned annotator adds, as a conclusion from the very many authorities he cites, as to the amount that the borrower ought justly to pay when he wishes to withdraw, or is in default, and his mortgage is sought to be enforced, that, "It must be remembered, that when a member obtains a loan or advance, he anticipates the amount he is to receive upon the termination of the association, or of the series to which it belongs. His obligation does not look to a repayment before that time. If he desires to withdraw, or it becomes necessary to onforce his mortgage against him before that period arrives, the question is, what amount ought he equitably to pay? In ascertaining this amount, the only difference between the two cases seem to be, that when he voluntarily withdraws he is entitled to receive the *bonus* or share of profits allowed him under the laws of the associations, and when he is in default, no such allowance is to be made him." The justness of this conclusion is vindicated on the ground that the defaulting member's action is an injury to the association, arising out of a breach of his obligations, for if he continue from time to time, for purposes of his own convenience, to withhold his contributions to the common fund, when they become payable, it is clear he is thereby depriving the association of just that much money, which ought to be invested for the common good; and if this be allowed till the end, it is also plain he will have derived, from his own violation of duty, an unjust advantage, in sharing with the other members, notwithstanding his defaults, an equal participation in the profits.

In principle there can be no difference in the rule as to the prompt payment of premiums on a policy in a life insurance company, and the premiums and other dues on a building and loan contract, and this court, speaking of the former, said : "It is too late, at this

day, to raise any question as to the legal validity of
such a contract. To one who understands anything of
the principles upon which the business of life insurance
is conducted, it is obvious that the punctual payment of
premiums is of the very essence of the contract. The
calculations of insurance actuaries, fixing the rates of
insurance, are based on the theory of prompt payment,
so as to afford opportunity for such re-investment as to
reap the fruits of compound interest upon the com-
pany's moneyed capital. Laxity in the enforcement of
punctual payments might, and no doubt would, fre-
quently lead to ultimate, if not speedy, financial ruin.
Stipulations, therefore, incorporated in insurance poli-
cies, making such payments conditions precedent to the
continued liability of the insurer, are generally main-
tained as valid by the courts."—*Ala. Gold Life Ins. Co.
v. Thomas*, 74 Ala. 582. Forfeitures for the non-pay-
ment of premiums is a necessary means, for insurance
or building and loan companies, of protecting them-
selves from embarrassment, and delinquency can not be
allowed except at the option of the companies.—*Ins. Co.
v. Statham*, 93 U. S. 24; *Klein v. Ins. Co.*, 104 U. S. 88.
In keeping with this doctrine, Mr. Pomeroy lays it
down, that a forfeiture of shares of stock in a corpora-
tion, duly incurred by the stockholders, for failure to
pay the calls or instalments thereon, as provided by the
charter or by-laws of the company, will not be set aside
or relieved against by a court of equity.—1 Pom. Eq.
Jur., §§ 457, 458; 2 Story Eq. Jur., §§ 1325, 1326.

With these principles in view, let us enquire into the
particulars of the case we have before us. This asso-
ciation was chartered under the provisions of the
Code, Part 2, Tit. 1, Ch. 4. Section 1556 confers upon
Building & Loan Associations, chartered thereunder, the
power, (4.) "To make all needful rules and regulations
and by-laws, for the transaction of its business, and the
management and control of its affairs;" (6.) "To com-
pel payment and compliance with all lawful orders, by
fines and forfeitures;" and (12.) "To secure the pay-
ment of instalments and loans, and a compliance with
all the terms on which loans are purchased, by mort-
gages with power of sale on real estate, and the same to
foreclose on default," &c.

The Association adopted a code of by-laws clearly

within the statutory powers conferred, by which it was provided, among other things, that the certificate, terms and conditions of the shares of the association and the by-laws form the contract with the shareholder; that persons desiring to become shareholders must make application according to forms provided for that purpose, the application forming a part and parcel of the applicant's contract with the association, (and in these applications there is an agreement by the applicant, that he will comply with all the rules and regulations of the association) ;. that all loans must be secured by note and first mortgage on real estate, the borrower to pay interest and a premium, at the rate of five *per cent. per annum*, each, the same to be paid on or before the 5th day of each month during the continuance of the loan ; that all shareholders are to pay a monthly instalment, each, of 35c. on each share (of $50) named in the certificate, on or before the 5th of each month, without notice, five cents of which shall be placed to the expense account ; that members in good standing may withdraw the amount paid by them, in monthly instalments of shares, into the loan fund, together with interest at the rate of six *per cent. per annum*, after giving sixty days notice in writing, such notice to be given after the expiration of two years ; that, if any shareholder shall neglect to pay the interest or premium on his loan, or his regular monthly instalments or other fees, for three months, or in any way fails to comply with his contract, the association may compel payment of principal and interest and premiums, fines and dues by proceeding on his note, and foreclosing the mortgage or other security, which shall at once become due and payable, *and the association may cancel and treat as forfeited the said shareholder's shares*, whether deposited as collateral security or not, *and all payments made thereon shall be forfeited to the association* ; and that time, punctuality and strict performance on the part of all shareholders, in the payment of premiums, fines, instalments, interest and loans, is made the essence of the contract.

Linsky signed his applications for the loan he received, and in them he agreed, "I will also comply with all the rules and regulations of the association." They were approved, and under them he received a loan from the association for $2,000, on the 16th June, 1890, for

which he executed and delivered his note or bond, payable six years after date, with interest thereon, and the premiums bid in his applications, and payable according to the by-laws, and assigning in said note as collateral security to the association for the sum loaned to him, and for the payment of the monthly instalments required of him, his 40 shares of stock in the association. In the conclusion of the note is the provision : "And it is stipulated, that in the event I make default in the payment of said instalments, interest, premiums or fines to said association, for a period of three months, then this bond shall mature and become payable, and I hereby authorize said association to cancel my said shares, and the same shall be thereby forfeited." At the same time, he executed the mortgage, a copy of which is attached to the answer of the association, conditioned that, "If the said Isaac Linsky shall well and truly pay said sum of $2,000, as evidenced by said note, at the maturity thereof, * * and shall also promptly [pay], on the 5th day of each month, the instalments due on his shares, until the amount in the loan fund to the credit of his shares, from monthly payments and profits, equals fifty dollars for each share on which said loan is made, and shall also promptly pay the monthly interest on said loan, and the premiums so bid by him, monthly, and shall comply with the laws of said association, then this conveyance shall be null and void, otherwise, to remain in full force and effect," subject to foreclosure as provided therein. On the 15th day of September, 1892, said Linsky having made default in the payment of the instalments on his stock, interest, premium and fines for more than three months, and never having filed an application for the withdrawal of his shares of stock, after he had been paying thereon two years, or at any other time, the association, by resolution duly adopted, declared the said forty shares of stock of said Linsky forfeited to the remaining stockholders of said association, and the same was passed to the credit of the loan fund of the association.

From what has been said, it appears, then, that the association was duly organized, under a charter obtained under the general law of the State for that purpose ; that the statute under which it was organized authorized it to make all needful by-laws for the transac-

tion of its business, and to compel payment and compliance with the by-laws, by fines and forfeitures; that the association adopted by-laws which provided for the forfeiture of the stock of its shareholders, if they failed for three months to pay the stipulated contributions to the association, as provided by the by-laws and the contract of the borrower; that Linsky agreed to abide these rules and regulations, and agreed that they should be a part of his contract of loan ; that he executed his note and mortgage, and agreed therein that, if he failed to comply with the terms of his contract, his stock should be forfeited to the association; that he did make default, and that the association, in accordance with its by-laws, declared his stock forfeited. The policy of the law favored the forfeiture, the statute authorized it, the rules of the association and the contract of the parties provided for it, and the association declared it, in accordance with the terms of the contract and by-laws. We find thus erected, against our declaring this forfeiture unconscionable and inequitable, as we are asked to do in this bill, a barrier so high we are unable to surmount it.

The appellant is entitled to the full amount of its said loan, principle and interest, according to the terms of the contract, from the time said Linsky ceased to pay the same thereon, without any abatement for the value of the stock forfeited, and if the same is not promptly paid, in redemption of its said mortgage by the complainant in the cross bill, or by the complainant in the original bill,—the complainant having submitted itself to the authority of the court to that end,—it is entitled to a decree of foreclosure of its said mortgage, and to a sale of the real property therein described, for the payment of its said debt and interest.

The complainant in the cross bill is entitled to redeem from the mortgages of the appellant and of the Anniston Loan & Trust Company, by paying the amounts that may be ascertained to be due thereon, respectively, within a short time to be specified by the court; and, in default of such redemption by him, then, the complainant in the original bill, the Anniston Loan & Trust Company, is entitled to redeem from the mortgage of the defendant, the Southern Building & Loan Association, by paying the full amount due thereon, principal and in-

[Turnipseed v. Jones.]

terest, without abatement for alleged payments thereon, and in that case, to the decree of the court foreclosing its own mortgage, and that of said association, so redeemed by it, and to a sale of the real estate in said mortgages mentioned for the payment of its own debt and that of said association which it has paid.

The decree of the court below is reversed, and the cause remanded for further proceedings in conformity with the above directions.

Reversed and remanded.