# Kelly *v.* Life Insurance Clearing Co.

113   458
124   284

*Action upon a Policy of Life Insurance.*

1. *Insurance; contemporaneous writings construed as one transaction.* Under the general rule of law that two or more writings executed at the same time and relating to the same subject matter, and having reference to each other, will be construed as one instrument, where a policy of life insurance contains a reference to other papers incident to the issuance of the policy, such as a health certificate and an application for insurance, each of which relates to the taking out of the insurance, such papers are to be considered with the policy as constituting the contract of insurance.

2. *Same; when statements in a contract constitute warranty; unaffected by immateriality.*—Where, in his application for insurance, the insured made certain statements in answer to the printed questions, certifying therein that they were true, and it was stipulated in the contract of insurance that if such statements were not true the policy of insurance should be void, such statements by the insured are warranties, which, if untrue, will avoid the policy, notwithstanding they may have been in reference to matters immaterial to the risk; and the contract and its binding effect or avoidance can not be affected by the immateriality of such statements.

3. *Same; same; binding though made through mistake, ignorance or carelessness.*—Matters alleged and warranted to be true in an application for insurance, though stated through mistake, ignorance or inadvertence, will avoid a policy of insurance if untrue; and the falsity of such statements constitutes a defense to an action upon an insurance policy.

4. *Action on insurance policy; breach of warranty constitutes defense; case at bar.*—In an action upon an insurance policy, where the defendant set up as a defense that statements made by the insured to obtain the insurance, and which were warranted to be true, were false, the following facts were shown: A health certificate attached to a policy of life insurance contained statements as to the present health of the insured, and the further provision: "It is further warranted that the statements herein are, and that the statements in the original application were, when made, in all respects true, otherwise

the insurance will be void." There was another stipulation in the contract of insurance "that the statements in the original application were, when made, in all respects true, otherwise the insurance will be void." In the original application the insured stated that he had not made an application for insurance to any other company which had been rejected. At the time of making the application to the defendant, the insured had applied for insurance in another company, paying the first premium for the policy, and after waiting some time without receiving the policy, the application and the premium were returned to him. *Held:* That the fact that the insured had, prior to the signing of the application, made an application to another company, which had been rejected, constituted a good defense to the policy, though the insured was ignorant of the fact that his former application had been rejected, and made the statement in good faith.

5. *Replications; joinder in issue; demurrer.*—The sustaining of a demurrer to replications which simply join issue upon the pleas, or which attempt to put a legal construction upon facts alleged in the pleas, is not erroneous.

6. *Affirmative charge.*—When the evidence sustains, without conflict, the allegations of a plea answering a complaint, the affirmative charge is properly given for the defendant.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN G. WINTER, Special Judge.

This was an action brought by the appellant, E. Anna Kelly, against the appellee, the Life Insurance Clearing Company, to recover ten thousand dollars, alleged to be due on two policies of insurance, Nos. 2741, 2742, each in the sum of $5,000, whereby the defendant on July 6, 1893, insured the life of Marshall B. Kelly, who died on June 24, 1894.

The two policies of life insurance sued on contain, each, the stipulation, that it is "accepted by the insured upon the express declaration and warranty by him made to said company, and conclusively evidenced by the acceptance hereof, that he has not now, and has never had, any ailment, complaint or disease, except the following : vertigo two years ago ; la grippe, 1891    *    *; that he has not, within five years, consulted or been prescribed for by any physician for any ailment or disease," except for vertigo and la grippe, at the times stated above. The policy contains, also, a statement of insured's age, and that his parents, brothers and sisters had been exempt from specified diseases. These re-

cited declarations are followed by the provision : "It is expressly agreed that, if the above declaration and warranty shall be found untrue in any respect, or if there shall be any breach thereof whatever, then this policy shall be *ipso facto* null and void, and all payments made hereon shall be forfeited to said company."

The policies were each signed by the president of the company, and attested by its assistant secretary. On the margin of each policy appears the following provision, viz. : "This policy shall not take effect until the first premium thereon shall have been paid to the company, or to some person authorized by the company to receive it, while the said insured is in good health, and in accordance with the health certificate and premium receipt accompanying the same," which was also signed by the president of the company.

The application for insurance was made on the 29th July, 1893, to the Penn Mutual Life Insurance Company. In this application, among other things, the question was asked the insured, "Have you ever applied to any company or agent for insurance, without receiving a policy of the exact kind and amount applied for, or are there any negotiations for insurance now pending? (If so, state fully particulars) ;" and the applicant answered, "No." The application in each instance, was for an ordinary life policy of $5,000, with premiums payable annually, such as were issued to the assured by the defendant company.

This application was followed by an agreement, as a part of the application, signed by the applicant, in which he warranted and agreed that certain things in respect to his habits and health were true ; containing also an agreement against suicide, whether sane or insane, that he would not, without the consent of the company, visit the Torrid Zone, or personally engage in certain pursuits supposed to be hazardous, on penalty of violating the policy. The concluding warranty and agreement was, "and that the statement and answers to the printed questions above, together with this declaration, as well as those made to the company's medical examiner, shall constitute the application and be the basis of this contract."

The health certificate proved and introduced was as follows : "The Life Insurance Clearing Company of St.

Paul, Minn.   Health Certificate concerning policies Nos. 2741 & 42.   To be signed by the insured, if true, on acceptance of said policy.   All the blanks must be filled before policy is delivered.

"Whereas, The Life Insurance Clearing Company, has issued upon my life the above numbered policy of insurance, I hereby certify, declare and warrant, in consideration of the delivery to me of said policy, that I am now in as good health, as when examined for admission to the Penn Mutual Life Insurance Co. of Philadelphia, Pa.   That I have not, since said date been sick, or afflicted with any disease requiring the attention of a physician, or met with any bodily injury impairing my health ; that my habits are sober and temperate, and that I am now in good health.   It is further warranted that the statements herein are, and that the statements in the original application were, when made, in all respects true, otherwise the insurance will be void."   Dated 20 July, 1893.

The defendant, on the branch of the case to which the court confines its decision, filed three pleas, the first of which, after stating matters of inducement set up, "that the policies mentioned in said complaint, were issued by it upon the original written application made by the insured, Marshall B. Kelly, to the Penn Mutual Life Insurance Company ; that said application was signed by said insured to certain questions therein propounded to him ; that among other matters, in reply to a question therein, asking said insured, if he had ever applied to any company or agent without receiving a policy of the exact kind and amount applied for, or if there were any negotiations for insurance then pending, the answer, no, is stated in said application ; and defendants say, that at the time, and contemporaneously with the delivery of said policy of insurance mentioned in said complaint, and as a part of the contract of insurance, the said Marshall B. Kelly signed and delivered to it a written health certificate, and it was stated in said certificate, that it was made concerning said policies, and that it was stated on the margin of each of said policies, that it should not take effect until the first premium thereon had been paid to the company, while the said insured was in good health, and in accordance with the health certificate and premium receipt accompanying the same.

That in said health certificate, among other matters, it was warranted by the said insured, that the statements in said original application for insurance were, when made, in all respects, true, and that otherwise said insurance should be void; and the defendant says, that said answer made in said original application to the said question propounded therein, as to any application having been made by the insured to any company or agent, without receiving a policy of the exact kind and amount applied for, was untrue in this, that the said insured, Marshall B. Kelly, before said application and his answer to said question propounded therein, had made application to the New York Life Insurance Company for insurance, without receiving any policy from said company."

The 2d plea was like the first, except that it stated, that said application to said New York Life Insurance Company had been made and rejected, on May 11th, 1893.

The 3d plea was, also, like the first, except that it stated, that the application to said company had been made, on the 25th of April, 1893, and that negotiations were pending at the time of the application on which the policies were issued.

The plaintiff demurred to these pleas, on grounds, in substance, as follows: That the pleas did not allege that the policies were issued on the faith of any statement in the health certificate; nor that the fact of the rejection of the insured by the New York Life Insurance Co. was material, or would have deterred defendant from issuing the policies, had this rejection been known; nor that any of the statements in said certificate were relied on in issuing the policies; nor that the policies were issued in consideration of any statement in said certificate; nor that the statements in said certificate and said application were parts of the contract of insurance; nor that there was any stipulation in said policies that they should become void by reason of the falsity of any statement in said certificate or application; nor that the untrue answers were any violation of any of the conditions of the policies; nor that the alleged misrepresentations was a matter relied on by the defendant in issuing said policies; and further that the said pleas were no answer to the 2d count of the complaint.

The court overruled the demurrers to said pleas, and

the plaintiff replied to them, in substance, as follows: 1st. Replication No. 1 sets out the health certificate in full, and then avers that the statements contained therein, and the statements in the application were representations, and not warranties which constituted any part of the consideration upon which the policies were issued.

3d. The 3d replication is to pleas 1, 2 and 3, and avers that the insured applied to the New York Life Insurance Co. about April 25th, 1893, paid the premium, and having heard nothing from said application for more than a month, he demanded and had his money returned to him, and afterward applied to the Penn Mutual Insurance Co. and, at the time of this last application, had no notice, knowledge or information that his application to the New York Life Ins. Co. had been rejected or was still pending.

8th. The 8th replication was to pleas 1, 2 and 3, and avers, that it was the principal business of defendant to take risks which had been rejected by other companies, and that the statements in the said pleas alleged to be untrue, were immaterial.

9. She denies that the insured made any of the warranties set forth in either of the pleas 1, 2, 3.

10. For further replication to pleas 1, 2, 3, plaintiff avers that the insured made the statements therein contained, but each and all of said statements were mere representations and were as to immaterial matters.

11. "For further replication to pleas 1, 2 and 3, plaintiff says that she admits that the insured never received the kind of policy applied for, or any policy from said New York Life Insurance Company, and, she avers that about the 25th of April, 1893, the insured made the application to said New York Life Insurance Company mentioned in said pleas and paid to the agent of said New York Life Insurance Company the money for the first premium; that the insured heard nothing further of the matter for more than one month, and having received no policy from said New York Life Insurance Company, he demanded that his money be returned to him, and before the 29th of June, 1893, said money was returned to him by the agent of said New York Life Insurance Company without any intimation to assured that said application to said New York Life Insurance Company had been rejected; that after said money had been

returned to him the insured made the application to the Penn Mutual Life Insurance Company mentioned in said several pleas, and at the time of said last mentioned application, he had no notice, knowledge or information that his said application to said New York Life Insurance Company had been rejected, or was still pending; and plaintiff avers that the statement of the assured as to his application to said New York Life Insurance Company set up in said pleas was not a warranty but a mere representation, and was made in good faith, and the said statement was immaterial, for that, it was the principal business of the defendant to accept insurance risks which had been rejected by other life insurance companies.''

The defendant demurred to these replications as follows: To the 1st, "That said replication shows that the statements in said health certificate and in said application for insurance were warranted by the said insured to be in all respects true, and that otherwise said insurance should be void."

To the 3d: (1) "Said replication fails to deny that said insured had, before said application, applied for insurance in the New York Life Insurance Company, without receiving any policy as stated in said plea number 1. (2) Said replication fails to deny that said insured had been rejected by the said New York Life Insurance Company, at the time of said application."

To the 8th: "Said pleas show that said statements alleged to be untrue in said pleas were warranted by the said insured to be in all respects true, and it is no answer to said pleas to say that the matters warranted were immaterial."

Demurrers were also interposed to replications 10 and 11, but the 9th was not demurred to.

The court sustained the demurrers to replications 1, 3 and 8, and overruled them as to the 10th and 11th. Issue was taken on pleas 1, 2 and 3, and on replications 9, 10 and 11.

Roswell P. Dorr testified, that he was the president of the defendant company; that he knew of the issue of the two policies to Marshall B. Kelly; that they were issued on an application made originally to the Penn Mutual Life Insurance Co.; that it was an original application, and was attached to his deposition; that defendant never received any other application (for in-

surance) on the life of Marshall B. Kelly; that Kelly was required to sign and deliver to the defendant a health certificate; that such certificate was to be signed by him and delivered to the defendant company before the policies were delivered to him, and that the defendant company received such health certificate, concerning said policies, which was signed by said Kelly and which was attached to his deposition.

S. K. Williamson testified, that the application made by the insured was signed by him in his presence; that he signed his name thereto as a witness; that the health certificate attached to the deposition of said Dorr, was signed by said Kelly in his presence, and delivered to him, the witness, as agent of the defendant, before the delivery of said policies to insured.

William M. Adams, one of the officers of the New York Life Insurance Company, testified that the insured did, on the 25th of April, 1893, apply to said New York Life Insurance Company for a policy of insurance on his life, and that said application had, on May 11th, 1893, been rejected.

Simon Hertz, the agent of the New York Life Insurance Company in Montgomery, Ala., in 1893, testified, corroborating the evidence of said Adams, that he sent said insured's application to said company; that Kelly came to him nearly every week after the third week, and wanted to know whether the policy had come, and finally after about the fifth week he demanded the return of his first premium which he had paid; that witness wrote to the company, was notified by it that the application was rejected, and witness returned the money and the note of insured and took up the receipt; that when he returned his money and note, witness told Kelly that he had gotten it back and there it was, and he said it was all right. He did not tell Kelly that his application had been rejected.

The application and health certificate containing the questions and answers, as stated above, were also introduced in evidence.

Upon the introduction of all the evidence, the court, at the request of the defendant, gave the general affirmative charge in its behalf, to the giving of which charge the plaintiff duly excepted.

There were verdict and judgment for the defendant.

[Kelly v. Life Insurance Clearing Co.]

The plaintiff appeals, and assigns as error the several rulings of the trial court upon the pleadings and the giving of the general affirmative charge for the defendant.

THOS. H. WATTS, for appellant.—The statements contained in the application for insurance were mere representations and not warranties, and the plaintiff's demurrers to the defendant's pleas should have been sustained.—*Ala. Gold Life Insurance Co. v. Johnson*, 80 Ala. 470.

HORACE STRINGFELLOW, *contra.*—1. In construing contracts of insurance, the intention of the parties must be collected from the writings to which their stipulations and agreements have been reduced.—*Russell v. Russell*, 64 Ala. 500. There is no difference between them and other contracts. That the contract is contained in several writings is immaterial. In such case, they must be construed together as if they were a single instrument.—*Ala. Gold Life Insurance Co. v. Thomas*, 74 Ala. 578; *Roberts v. Chenango &c. Ins. Co.*, 3 Hill 502; *Collins v. Whigham*, 58 Ala. 440; *M. & M. R. Co. v. Gilmer*, 85 Ala. 434; *Robbins v. Webb*, 68 Ala. 394; *Story's Ex. v. Brewer*, 17 Ala. 712.

2. If a "warranty is made its stipulation and condition must be strictly complied with. The question is disembarrassed of any consideration of materiality, the parties having made it material by their agreement." *Ala. G. L. Ins. Co. v. Garner*, 77 Ala. 215; *Ala. G. L. Ins. Co. v. Johnson*, 80 Ala. 470. Whatever may have been the weight of the different statements made by the insured in said original application in influencing the defendant to issue the policies sued upon, they were all warranted alike in said certificate to have been "when made, in all respects true otherwise the insurance should be void." It is sufficient that the parties competent to fix the terms of their contract have so contracted. *Phœnix Ins. Co. v. Copeland*, 90 Ala. 390.

3. If the health certificate signed and delivered by the insured "in consideration of the delivery" of said policies did create a warranty, as averred in said pleas, then the defendant was entitled to the general charge upon them, since they were being proven by uncontra-

dicted testimony.—*Ala. Gold Life Ins. Co. v. Garner*, 77 Ala. 210.

HARALSON, J.—The plaintiff's counsel in his brief, states the issue on the pleadings in the case, as follows: "The theories upon which the causes of demurrer are based, are, 1st, That the policies themselves contain the only conditions, stipulations and warranties upon which they were issued; and, 2d, That if the said application and health certificate are to be considered parts of the contract of insurance, and as containing some of the conditions upon which the policies were issued, said statements in said application and in said certificates are to be considered as representations and not as warranties, and, being only representations, the matter complained of must have been material to the risk."

The defendant's counsel states the issues as to the pleas 1, 2 and 3, and demurrer thereto to the same effect, as follows: "The first question to be considered is, do the said pleas (1, 2 and 3) show that the said answers were warranted by the insured in said contracts of insurance sued on, to be true? If they do show such warranty, then the demurrers of plaintiff thereto were properly overruled; otherwise, they should have been sustained."

The parties are thus agreed as to the substance and effect of the demurrers to the pleas, and we may, therefore, consider the questions thus presented, 1st, whether we are to look alone to the face of the policies, as containing the only conditions, stipulations and warranties upon which they were issued; 2d, if we go outside the policies themselves, and look at the application for insurance, and health certificate, as it is called, as parts of the contract of insurance, whether the statements therein contained are to be regarded as representations only,—the matter, as alleged, not being material to the risk,—or, they are to be treated as warranties, the breach of which will avoid the policies.

The policies themselves contain an express warranty in respect to the health of the insured, and his freedom from any disease; of his age, and the exemption of his parents, brothers and sisters from specified diseases. It is then provided in each, "it is expressly agreed, that if the above declarations and warranty shall be found un-

[Kelly v. Life Insurance Clearing Co.]

true in any respect, or, if there shall be any breach thereof whatever, then this policy shall be *ipso facto* null and void, and all payments thereon shall be forfeited to the company."

If this were all, and the policies were to be construed without reference to any other contemporaneous writings, only those statements which are found in the policies themselves, and expressly warranted to be true, could be considered as warranties,—the rule being, that courts will not create or extend a warranty by construction. But, the rule of law is well settled and familiar, that different writings, executed at the same time and relating to the same subject matter, will be construed as one instrument. The intention of the parties controls, and is to be gathered from the writings to which their stipulations and agreements may be referred.—*Bridgeport Land & Imp. Co. v. American Fire-proof Steel Car Co.*, 94 Ala. 596 ; *M. & M. R. R. Co. v. Gilmer*, 85 Ala. 423, 434 ; *Walker v. Struve*, 70 Ala. 167 ; *Robbins v. Webb*, 68 Ala. 398 ; *Collins v. Whigham*, 58 Ala. 440 ; *Byrne v. Marshall*, 44 Ala. 357. A good illustration of the rule as applicable to the case in hand, is that of *Roberts v. The Chenango M. Ins. Co.*, 3 Hill, 501, where a policy of insurance was made by using a form printed on the half of an entire sheet of paper ; and on the other half sheet, there was a printed statement, commencing, "*Conditions of Insurance*," but no express reference was made to this in the body of the policy. The court held, that there was no doubt of the intent that both should be taken together ; that the assured accepted the policy, with what purported to be conditions on the same sheet ; that there was no need of an express reference by the policy to the conditions, in order to fix the meaning, and that the juxtaposition of the papers was a sufficient *prima facie* expression, subject to be rebutted by parol evidence, that they were connected by mistake. In the *Ala Gold Life Ins. Co. v. Thomas,* 74 Ala. 578, 582, the indorsements and the policies on which they were made, were construed together as a whole. It may be said, then, that where reference is made in one paper to another, they are to be construed together as as a whole, when, legally, the papers constitute one entire transaction, as they most frequently do in a policy of life insurance, the application therefor and indorsements there-

on.—*Ala. Gold L. Ins. Co. v.Johnson*, 80 Ala. 467, 471. They need not be physically attached.

On each of the policies in hand, there was entered on the margin in writing or printing, the words, "This policy shall not take effect, until the first premium thereon shall have been paid to the company, or to some person authorized by the company to receive it, while the insured is in good health, *and in accordance with the health certificate and premium receipt accompanying the same.*"

Again the insured, in making his application for these policies, signed an agreement as part of his application, as follows : "I hereby warrant and agree, * * * * that the statements and answers to the printed questions above, together with this declaration, [containing other agreements] , as well as those made to the company's medical examiner, shall constitute the application, and be the basis of this contract."

Further still, to make the intention of the parties even more manifest and indubitable, in accepting the policies, the insured signed another paper, or certificate, provided on the face of the policies themselves to be signed, in which he states, in consideration of the issuance and delivery of said policies, respectively, to him, "I hereby certify, declare, and warrant in consideration of the delivery to me of said policy, * * * that the statements herein, [touching his health and habits] are, *and that the statements in the original application were, when made, in all respects true, otherwise the insurance will be void.*" Italics ours.

In this case it thus appears, the contract of the parties as averred in said pleas, consisted of three writings to which their statements and agreements are necessarily referable, namely, the original application for insurance, made to the Penn Mutual Life Insurance Co. ; the policies of insurance themselves, and the health certificate. From these papers, there can remain no doubt of the intent of the parties, that they should be taken and construed together, as if there were but one paper embodying the provisions and conditions of each. When so construed, we are constrained to hold, that when the insured, in his application for insurance, made the statement that he had never applied to any company or agent for insurance, without receiving a policy of the exact kind and amount applied for and that there were no negotia-

[Kelly v. Life Insurance Clearing Co.]

tions for insurance then pending, he warranted his answer to be true, otherwise, as agreed in his certificate on receiving the policies, the insurance was to be void. This agreement was not a simple representation of the fact he averred, to be held of no vitiating effect, if untrue or immaterial; but a warranty as plain as words can create one, and on the truth of which the vitality of the policies were made to depend.

In giving construction and effect to such a contract, in a kindred case, this court has well said : "In construing this contract, all its conditions and terms will be construed liberally, in favor of the assured, and strictly against the insurer. Clear and unequivocal language must be required in order to create a warranty, and all statements of a doubtful meaning must be construed to be representations rather than warranties. * * * But, while these rules of construction are followed, it is our duty 'to interpret the contract of the parties, as they have made it, and to enforce it according to obvious intention legally expressed, so long, at least, as it offends no law, or violates no principle of public policy.'—*Ala. G. L. Ins. Co. v. Thomas*, 74 Ala. 578, 583."

In the *Ala. G. L. Ins. Co. v. Garner*, 77 Ala. 215, it was again said : "While warranties are not favored, and will neither be created nor extended by construction, when a warranty is expresssly, and in terms declared, its stipulations and conditions must be strictly complied with. The question is disembarrassed of any consideration of materiality, the parties having made it material by their contract." Materiality of a statement is not, therefore, as is generally conceded, an element of defense in case the statement is warranted to be true. The agreement of the parties, that a statement is true, and that its falsity, in any respect, should avoid the policy, on principle and authority, removes the question of materiality from the consideration of the court and jury. *Ætna Life Ins. Co. v. France*, 91 U. S. 510 ; *Jeffries v. Life Ins. Co.*, 22 Wall. (U. S.) 47. The demurrers to said pleas, it must be held, were properly overruled, for the pleas aver, that in said health certificate, "it was warranted by the insured that the statements in said original application were, when made, in all respects true, and that otherwise the insurance should be void." The warranty is admitted by the demurrers. Matters alleged

30

and warranted to be true, if false, though stated by mistake, through ignorance, carelessness or inadvertence, constitute a defense to an action on a policy of life insurance.

There is nothing in the case of the *Ala. Gold Life Ins. Co. v. Johnson*, 80 Ala. 471, as is supposed, in conflict with these decisions. In that case, it is stated expressly, that there is nothing therein decided, which conflicts with the cases above referred to. The court properly said : "The strong inclination of the courts is to make these statements or answers, binding only so far as they are material to the risk, when this can be done without violence to the clear intention of the parties expressed in unequivocal and unqualified language to the contrary."

From the foregoing it plainly appears that the rulings of the court, sustaining demurrers to replications 1, 3 and 8 and to pleas 1, 2 and 3, were properly made. The matters set up in said replications were no answer to said pleas.

Replications 9 and 10 are general, and no more than a joinder in issue on the allegations of the pleas, that the statement in the pleas to which the replications refer, was a warranty. The replications merely deny that the statement referred to in each plea was a warranty, and sets up that it was a mere representation. The same is true of replication 11. The 9th was not demurred to, but the 10th and 11th were, and the demurrers overruled. The demurrers to the last two, were probably overruled, as to pleas 1, 2 and 3, for the same reason, that said replications denied, as was done in replication 9, that the statement as to the previous application for insurance was a representation merely and not a warranty. Being a matter of legal construction of the papers themselves, and what they contained, demurrers might well have been sustained to each of said replications, for as we have seen, they contain, really no answer to the said pleas. In no event could replication 11 be held to be an answer to plea No. 1, which contains nothing about a rejection of insured by said New York Life Insurance Co. The replication admits the allegations of said plea 1, and simply denies that the allegations in respect to the previous applications in said insurance

[Ansley v. Bank of Piedmont.]

company was a warranty, and sets up that it was a representation.

The allegations of each of said pleas, by the policies and the papers contemporaneously executed as a part of them, and by the evidence introduced, without any conflict, are sustained, and there was no error, therefore, in giving, as was requested, the general charge in favor of defendant.

It is unnecessary to consider the other questions raised by other pleading in the cause, discussed by counsel, the rulings on which are assigned as error; since their decision, the one way or the other, could not affect the result.

Affirmed.