# Sheldon *pro ami.* v. Birmingham Building & Loan Association.

### *Bill for Account and to Cancel Mortgage.*

1. *Building and loan associations; effect of Code on charters granted them.*—A declaration to incorporate a building and loan association in this State need not set out the powers sought to be secured. These are set forth and defined in the statutes embodied in the Code, which, as a grant and also a limitation of power, have effect as if embodied in a special charter to each of such associations to which incorporation is granted.

[Sheldon *pro ami.* v. Birmingham Building & Loan Association.]

2. *Same; premiums on stock distinct from interest on loans.* Where by the by-laws of a building and loan association, organized under the laws of this State, provision is made for payments on its shares of stock, such payments are distinct from the interest accruing on loans made to shareholders by the association, and hence a borrowing shareholder cannot have the payments made by him on his stock credited on his loan.

3. *Same; may charge premium on loan and interest on the amount loaned.*—A building and loan association organized in this State has the right under the Code to sell its loans to the highest bidder among its members; and the premium bid on the sale of a loan, being an indebtedness distinct from the loan itself, may be deducted from the amount loaned and interest still charged on the whole amount loaned. Such power extended to these associations is not a special privilege in a sense obnoxious to the constitutional provisions looking to the conservation of equal rights.

4. *Same; legislature may exempt from the usury laws.*—"The General Assembly ordained the statute against usury, and its power to designate the transaction which shall be deemed offensive to or which shall be excepted from the influence of the statute is not questioned. When it lends express sanction to a particular transaction from the operation of the statute that transaction is withdrawn and excepted." Hence, it may relieve building and loan associations from the operation of the law which fixes the rate of interest at eight per cent per annum.

5. *Mortgage; when no right to redeem.*—Where a shareholder of a building and loan association has borrowed money of the association and has given a mortgage to secure it, and no forfeiture has been claimed by the association and no foreclosure is sought, but it is continuing in the performance of the contract, there is no right of redemption from the mortgage until the maturity of the debt secured by it except under the terms of the contract.

6. *Courts do not relieve from mere hardship.*—The courts do not relieve from mere hardship of contracts, but must accord to the parties their legal rights acquired under them.

7. *Next friend, when use of name improper.*—Where a suit relates to the separate property of a married woman, it should not be brought in the name of a next friend.

APPEAL from the Chancery Court of Jefferson.
Heard before the Hon. THOS. COBBS.

[Sheldon *pro ami.* v. Birmingham ·Building & Loan Association.]

Esther Sheldon by next friend brought this suit against the Birmingham .Building & Loan Association, a corporation, for an accounting and for the settlement of all matters between the parties growing out of loans made by the company to complainant, and for the cancellation of mortgages executed to secure said loan. The bill alleges that the complainant borrowed on two separate occasions sums of money from the company; that the company charged her a premium as a condition for making each loan and deducted it from the sum loaned, but took her notes for the full sum specified as the loan and for the interest thereon; and that she executed mortgages on lands to secure these full sums and the interest thereon; and that this course of dealing is usurious and was a scheme to evade the usury laws. It prays that the amount of the premiums paid by her be credited to her on the notes and that all matters be settled between the complainant and the company—the complainant offering to pay any sum found to be due the company; but asking that the lands mentioned in the mortgage be sold if the complainant fails to satisfy any decree for a balance due from her to the company.

DENSON & TANNER, for appellant, contended, that the appellee was not in fact a building and loan association because the declaration of purposes in the application for charter did not specify that the purpose and intent of the association were to aid persons of limited means to secure homes for themselves—such being necessary to constitute such association. The following authorities are cited.—Enlich on Building Associations, 1 Ed. 465; *Jarrett v. Cope,* 68 Pa. St. 67; *Parker v. Fulton B. & L. Ass'n,* 46 Ga. 166; *Mills v. Salisbury Ass'n,* 75 N. C. 292; *Lathan v. Washington Ass'n,* 77 N. C. 145; *Meroni v. Atlanta Ass'n,* 47 Am. St. Rep.; *Herbert v. Kenton Ass'n,* 11 Bush. 296; *Martin v. Nashville Ass'n,* 2 Cold. 418; *Rhoad's Case,* 87 Pa. St. 180; *Mobile B. & L. Co. v. Robertson,* 65 Ala.; *Granger v. Kamper,* 73 Ala.; Morowitz on Corporation, Secs. 318, 323; *Thomas v. W. Jersey R. R. Co.,* 101 U. S. 71; ·*Oregon R. R. Co. v. Oregonian Ry. Co.,* 130 U. S. 1; 4 Thompson on Corporations, Sec. 5669; *Davis v. Old Colony R. R.,* 131 Mass.

266; *Chambers v. Falkner,* 65 Ala.; *Marion Bank v. Dunkin,* 54 Ala.; *Plank Road v. Montgomery,* 31 Ala.; *Grand Lodge v. Waddill,* 36 Ala. 318. (2). On the question of usury the following authorities are cited: *Mills v. Salisbury B. & L. Ass'n,* 47 Am. St. Rep.; *Martin v. Nashville B. & L. Ass'n,* 2 Caldwell, 418; *Fall's Case,* 97 Ala. 417; 3 Parsons on Contracts, 7 Ed., p. 110; *Barnard v. Young,* 17 Bes. 44; *White v. Wright,* 3 B. M. C., 273; *Uhlfelder v. Carter,* 64 Ala. 527; *Rhodes v. Mo. Savings & Loan Co.,* 173 Ill. 621.

SMYER & SMYER, *contra,* contended, that our statute laws respecting building and loan associations are not class legislation; that the grant from the sovereign power of the State and not the declaration of the incorporator creates and defines and enumerates the corporate powers; that the association may charge premium on loans.—*Trust Co. v. Whitehead,* 49 N. W. Rep. 318; *Holmes v. Smythe,* 100 Ill. 413; *Freeman v. Ass'n,* 114 Ill. 182; *Ass'n v. Read,* 93 N. Y. 474; *McLaughlin v. Ass'n,* 62 Ind. 264; *Winget v. Ass'n,* 128 Ill. 67; Endlich on Building Ass'n, Sec. 129; *Kelly v. Ass'n,* 64 Ala. 501. (2). The defendant was regularly incorporated; or if not the complainant is estopped to deny it.—Endlich, Sec. 513; *Ass'n v. Thompson,* 62 N. W. Rep. 544; *Ass'n v. Ford,* 27 Conn. 282; *Ass'n v. Rice,* 27 Conn. 293; *Haggerman v. Ass'n,* 25 Ohio St. 186; *Cochrane v. Arnold,* 58 Pa. St. 399; *Lucas v. Ass'n,* 22 Ohio St. 339; *Williamson v. Ass'n,* 89 Ind. 389.

SHARPE, J.—The general statutes contained in the Code of 1876 when the defendant corporation was organized and existing in the Code of 1886 when this transaction arose, set forth and define the powers of building and loan associations. In such respect they differ from those statutes relating to some other incorporations which leave the purpose and plan of the body incorporated to be declared by a writing filed. As a grant and also as a limitation of power they have effect as if embodied in a special charter leaving unexpressed only the implied authority to do the acts in furtherance of the objects and purposes so expressed. They are not

left to be increased or altered by the declaration required to be filed as an initial step in the organization. The office of the declaration was well defined in *Granger Life Ins. Co. v. Kemper,* 73 Ala. 325, where it was said by this court: "It is an acceptance by the corporators under the name designated for the objects expressed, of the corporate powers and capacity the law confers and a statement of the principal constituents of the corporation, the amount of the capital stock, the names of the corporators and the quantity each has in the capital stock. There is no authority for introducing more into it and if more be introdced, it is mere surplusage not adding to or detracting from the force of the declaration."

Adopting this principle as clearly correct we fail to recognize the importance imputed by appellant's brief to the recital of purpose in the declaration filed to incorporate this association or of the omission therefrom of any statement of purpose to build or aid in building houses for its members. As exhibited in the bill the declaration so far as is material to be considered is as follows: "The undersigned being desirous of forming a building and loan association make the following declaration: 1st. The name of the association shall be the Birmingham Building and Loan Association. The general objects for which said association is formed is the saving of funds from monthly payments of the members to be advanced to those desiring to invest it to the end that the profits arising from the business thus transacted shall with the monthly payments largely reduce the number of months required to make each share worth its par value of $40."

The intention of the declarants to form a "building and loan association" is clearly expressed and the scheme of intended operation so far as it is disclosed is consistent with and adapted to the exercise of the powers expressly conferred by the statute upon such associations including the building of houses, the lending of money to its members for building and for other 'purposes. We doubt not the sufficiency of the declaration for the incorporation of the defendant as a building and loan association, having all the powers expressed or

implied by the statute as attaching to such associations formed thereunder.

The question of usury as inhering in building and loan contracts has been prolific of judicial writing upon the origin and character of such associations and especially as to the relation of a loan to the stock upon which it is based. Courts in different jurisdictions in cases arising under differing statutes and contracts, have produced decisions apparently in conflict; some holding that charges upon the shares are but disguised charges for the loan which may infect the contract with usury and that payments thereon are properly payments upon the loan. Other decisions favor the application of such payments upon the stock as the thing charged for, unless by the terms of the agreement they go in extinguishment of the loan. The latter view has been adopted by this court as applicable to the system created by our Code. In *Southern B. & L. Association v. Anniston L. & T. Co.*, 101 Ala. 582, the question was directly raised upon a bill filed to redeem from a forfeiture of stock and from a mortgage taken by a building and loan association formed under the general statute and seeking to have credited upon the loan secured by the mortgage, payments made by the mortgagor upon his stock in the association. The right to have such payments so applied was denied upon the single ground of the separate existence of the stock and the obligation to make payments thereon as distinct from the undertaking to pay the debt accruing on account of the loan. The ground upon which relief was denied in that case is strengthened in this by the fact that there has been no forfeiture of complainant's stock. It cannot be held that she is entitled by this proceeding to have the payments made by her upon her stock credited upon her loan as sought by the bill.

Among the powers conferred by the statute referred to, Code 1886, section 1556, is "when funds are on hand, to lend the same to any shareholder of the corporation on such security and on such terms and conditions as may be prescribed by the by-laws." As an equal mode of awarding the loan the statute authorzied its sale to the highest bidder and provided that at all such sales

[Sheldon *pro ami.* v Birmingham Building & Loan Association.]

"all shareholders shall have equal opportunities to bid under such regulations as may be prescribed by the by-laws." A by-law of the defendant exhibited in the bill provides that "the amount paid into the treasury each month shall be sold to the highest bidder or bidders and any member taking an advance or loan shall allow the premium offered by him or her to be deducted as set forth in section 36 and shall secure the association for such advance or loan by bond or mortgage on stock of the association." The by-laws also provide that "none but members shall be allowed to bid for a loan or advance." Under such system premiums result from competing bids of shareholders *inter se* for the privilege of receiving the loan and in one respect at least they stand upon a different footing from interest in that they are controlled by the competing members and not by the lending association. If the premium be treated as interest the general interest rate of 8 per cent may be exceeded in the interest charge but the power given by the statute to the association and its members to so contract among themselves is not a special privilege in a sense obnoxious to the constitutional provisions looking to the conservation of equal rights. The peculiar plan of business they adopt and the mutual participation in the profits arising from it, mark building and loan associations as a class so distinct from ordinary lenders as to warrant the distinct legislative grant of the power to so regulate charges for an advance or loan. Besides the statute is general in its application in that it excludes no one from the right to enter into the relation of either a borrowing or non-borrowing stockholder, or from the right to organize under its provisions the class of the corporations having such power to lend, and thereby to participate in the benefits conferred by the statute.

The question as to the constitutional right of the legislature to confer upon building and loan associations the right to contract for more than the general rate of interest on its loans is not *res integra* in this State. Such right was recognized and declared in the case of *Montgomery &c. Association v. Robinson,* 69 Ala. 413 where it is said: "The general assembly ordained the

[Sheldon *pro ami.* v. Birmingham Building & Loan Association.]

statute against usury, and its power to designate the transaction which shall be deemed offensive to or which shall be excepted from the influence of the statute is not questioned. When it lends express sanction to a particular transaction from the operation of the statute that transaction is withdrawn and excepted." That case was approved and the same principle reiterated in *Security & Loan Co. v. Lake,* 69 Ala. 456. Those cases have long stood as authority and doubtless reliance upon the law as so declared has resulted in investments in and transactions by such associations to the extent that the doctrine of *stare decisis* must forcibly apply. The principle is well sustained by authority. See *Vermont L. & T. Co. v. Whithed,* 49 N. W. Rep. (Ark.) 320; *State v. Hammer,* 42 N. J. L. 435; 4 Am. & Eng. Ency. Law, 1008 and 1074. The decision in *Security & Loan Co. v. Lake, supra,* was made with reference to the general statute which controls this case and is therefore direct authority for the conclusion which we reach that the premium mentioned in complainant's contract whether treated as interest or otherwise might lawfully be taken by the defendant.

Complainant is charged with interest upon the gross amount of the loan including the part used or deducted in payment of the premium. Decisions elsewhere are numerous and discussions are diverse as to whether a charge for interest on the amount of the premium infects the contract with usury. So far as they are based on constitutional or statutory laws differing from ours or upon by-laws or contracts unlike those here involved they are of slight value in the consideration of this case. "On such terms and conditions as may be prescribed by the by-laws" is the broad privilege extended by the statute in respect to making loans.

The by-law passed in pursuance of that power is made part of complainant's contract and is as follows: "Any member taking an advance or loan shall pay to the association, in addition to his or her monthly dues for shares, monthly interest on the gross amount of the advances or loan at the rate of 8 per cent *per annum.*"

What has been said of the power under the general statute to take the premium applies as well to interest

upon the amount borrowed to pay the premium. Complainant owed as the premium she agreed to pay, a debt which was separate from that she owed for the loan. The effect of the deduction from the amount borrowed was the same as if the whole had been paid her in hand and out of it the separate debt had been presently paid. *Bowen v. Association,* (N. J.) 28 Atl. Rep. 67, s. c. 51 N. J. Eq. 272. The terms as to interest and the mode of its payment was according to the agreement and the agreement was one which the parties had a right to make.

The averments that the complainant was never a shareholder in the association and that there was no sale of the loan at auction or competitive bidding upon her application for the loan are neutralized by inconsistent averments to effect that the premiums and monthly payments were required of her under the by-laws which being set out show their requirements to be that loans be made to the highest bidder and to shareholders only; and it is further averred that complainant secured the loan partly "with an alleged issuance of eighty-two shares of stock in said association." Taken together these cannot be construed as an averment of a non-compliance with the statute or by-laws in respect either of fixing the premium or lending to a non-stockholder.

No forfeiture has been claimed by the association and no foreclosure is sought so far as appears in the bill. The defendant continuing in the performance of the contract there is no right of redemption from the mortgage until the maturity of the debt secured by it except under the terms of the contract.—*Wier v. Granite State &c. Association,* 38 Atl. Rep. (N. J.) 643, s. c. 56 N. J. Eq. 234; *Saunders v. Frost,* 19 Wend. 660; *Moore v. Cord,* 14 Wis. 213; 20 Am. & Eng. Ency. Law, 619.

Failing to show by the facts averred any usurious or illegal exactions of the complainant entitling her to relief the bill is without equity. The courts do not relieve from the mere hardship of contracts but must accord to the parties their legal rights acquired under them.

The suit relates to the separate property of the complainant and was therefore improperly brought in the

[Wallen *et al.* v. Montague & Lewis *et al.*]

name of a next friend.—Code, § 2527; *Wolfe v. Under-wood,* 91 Ala. 523.

The decree of the chancery court will be affirmed at appellant's cost.