# Interstate Building & Loan Association v. Brown.

*Bill in Equity to avoid Contract with Building & Loan Association on the Grounds of Usury.*

1. *Building and loan association; loan by such company not usurious.*—The lending of money by building and loan associa-

tions, organized under the general laws of this State, according to the building and loan plan, and on such terms as are prescribed by the by-laws of such association, and in accordance with the provisions of the statute relating thereto, is not restricted by the statute regulating the rate of interest generally, and such contracts are not void for usury. The fact that a building and loan association derives its power under the general statutes of another State, does not affect or change the principle here announced; since foreign corporations of this character, upon compliance with the conditions prescribed by the laws of this State, have a right to enter into such contracts.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. R. B. KELLY.

The bill in this case was filed by the appellee, W. L. Brown, against the Interstate Building & Loan Association on December 31, 1898.

The bill averred that the complainant was a resident citizen of Pike county, Alabama, and that the Interstate Building & Loan Association was a private corporation organized and chartered under the laws of the State of Georgia, and was doing business by its duly authorized agent in this State.   It was then averred that the defendant association was incorporated for the purpose of doing a general building and loan association business and as it was authorized to do under the general laws of the State of Georgia, established by-laws, rules and regulations for the government of its business.   There was then set out in detail the substance of these by-laws, rules and regulations, which showed that the business of the defendant corporation was conducted under the mutual building and loan association plans, and its by-laws, rules and regulations were substantially the same as are found in the building and loan associations organized under the laws of this State.   The provisions of such by-laws, rules and regulations governing borrowing stockholders and the negotiations of loans from the association required that the borrower was to pay on his stock and upon the loans and interest in monthly installments; that no loan could be made

except to a stockholder unless otherwise specially ordered by the board of directors, and that when the payments on the stock, together with the accumulations resulting from the profits, fines and forfeits matured the stock, the money borrowed was considered as refunded. After setting out these by-laws, rules and regulations with more or less detail, the complainant averred that in the month of November, 1889, it negotiated a loan of $600 with said Interstate Building & Loan Association "that before said association would make said loan, it required the complainant to subscribe for twelve shares of what is known and called as capital stock and make three months' advance payments thereon, which he did * * * that on the 25th day of November, 1889, he executed and delivered to said association his bond in the sum of $1,200 to secure said loan, the conditions of which bond were that complainant would, on the second Thursday of each and every month and every year after the date of said bond, pay to said association the sum of $7.20 as a monthly installment on said loan, and $3 as interest on said loan and continue to make said payments for and until such time as each share of the stock borrowed on should mature. * * * That on the same day and at the same time he executed and delivered to said association a mortgage on the real estate described * * * to secure said loan of $600. * * * That on the same day and at the same time he transferred and delivered to said association his said twelve shares of stock as further security for said loan of $600; that all of this was required of complainant by said association before it would make said loan to him, and that upon these securities he did secure from said association a loan of $600. It was then averred that in August, 1891, the complainant negotiated an additional loan of $50 with said association and the same requirements were made as to the subscription of stocks, the execution of bond and the mortgage and the delivery of the stock subscribed to him as additional security, as were required of him in the previous loan. In each

of these loans the mortgage was executed upon the same property. The complainant then averred that from November 25, 1889, to March 11, 1896, he paid to said association on account of the first loan, the sum of $742.80, which sum was made up of various sums paid as monthly installments on said loan and interest and fines, and that prior to July, 1896, he had paid on account of said loan largely more than enough to satisfy said sum with legal interest. He further averred that from the month of August, 1891, to March, 1896, he paid to the association on account of the additional loan of $500, the sum of $428.50, which sum was made up of various sums paid as monthly installments on said loan and as interest thereon and fines, as required by the by-laws, and that said sum of $428.50 when added to the overplus due the complainant by said association on account of the over payments of the first loan, makes a sum largely more than enough to satisfy the second loan of $500.

After then averring that there was nothing due to the association from the complainant, upon either of said loans, the bill then continued that notwithstanding this fact, the complainant, in August, 1896, threatened to foreclose the mortgage under the power therein contained. That at this time an agreement was reached between the complainant and himself by which the mortgages were to be foreclosed and the property reconveyed to him; that in accordance with the terms of this agreement the mortgages were foreclosed under the power therein contained on July 20, 1896; that at the foreclosure sale the vice-president of the association became the purchaser, bidding the amount alleged to be due to the association from the complainant with the exception of a few dollars, which were paid by the complainant. That afterwards the said purchaser reconveyed said property to the association for a recited consideration of $900, which was the amount paid by him, and on September 2, 1896, the said association reconveyed the property to the complainant for the recited consideration of $900 to be paid as therein named; that to secure the purchase money of

30

this last conveyance to him, the complainant executed to the defendant his bond and mortgage upon said property.

The complainant then averred that said foreclosure and the conveyance thereunder were made in accordance with a special agreement between the parties, and they were not *bona fide* transactions, "but that all of said transactions were made and entered into for the express purpose of evading the usury in said debt and mortgage and for the purpose of covering the same by shifting the property from one to another, so as to purge the said contracts of said usury and for the express purpose of shutting the complainant off from pleading usury to said contract," and that all of said foreclosure proceedings were "for the express purpose of defeating the objects and purposes of the usury laws of this State." It was further averred that notwithstanding the recitals of the bond and mortgage executed by the complainant, he never borrowed from said association any money or other property thereof, but that they were given for and on account of the loans thereafter made and to further secure the same. That notwithstanding these facts, he had paid on account of said loans, a sum largely more than enough to pay off said debt and the interest thereon, but that the association was claiming that he was indebted to it in the sum of $900, and was proceeding to foreclose the last mortgage executed by him for the purpose of collecting said alleged debt, and that if permitted to proceed under the power of said mortgage, it would result in forcing the complainant to pay a debt he never contracted, and which he had paid according to the by-laws of the association. The complainant then averred that he was not at the time of the filing of the bill and had never been "a member of said association, and that he never owned in his own right any of the capital stock thereof, and that he was never accorded any of the rights and privileges of a stockholder in said association, but that requiring him to subscribe for said stock in said association and the issuing of said stock to him was a mere guise or scheme on the part of said associa-

tion, concocted, planned and adopted for the purpose of and with the design of exacting from the complainant, for the use of the money borrowed by him, a greater per cent. than the legal rate of interest"; and that all moneys paid to such association by him were payments on the loans made to him.

The prayer of the bill was that an injunction issue restraining the said association, its agents or attorneys from further prosecuting the foreclosure proceedings until the final determination of the suit. That upon the final hearing the chancellor would decree that the mortgages given in the first instance to secure the respective loans had been fully paid prior to the foreclosure thereof, and that said foreclosure was, therefore, a nullity, and that the respondents acquired no rights or title thereunder and that the same be cancelled; that it be further decreed that the bond and mortgage executed to secure the $900 after the foreclosure of the mortgage was void for the want of consideration; that it be further decreed that all of said contracts, bonds and mortgages were usurious, void and uninforceable.

To this bill the defendant demurred upon several grounds, which may be summarized as follows: 1st. "The bill does not contain equity. 2d. The bill does not sufficiently charge a claim of usury, in that it does not show the amount of usury claimed. 3d. It does not show the amount paid by claimant in excess of 8 per cent. interest. 4th. Said bill shows on its face that no usurious interest was taken or reserved by the respondent from the complainant."

Upon the submission of the cause upon the demurrers, the chancellor held that they were not well taken, and rendered a decree overruling them. From this decree the defendant appeals, and assigns the rendition thereof as error.

FOSTER, SAMFORD & CARROLL, for appellants, cited *Beck v. Simmons,* 7 Ala. 76; *Strong v. Waddell,* 55 Ala. 473; *Tobin v. Bell,* 61 Ala. 129; *Griel v. Lomax,* 86 Ala. 136; *Skinner v. Chapman,* 78 Ala. 376; Code, § 1067.

E. R. BRANNEN, *contra,*—The contract entered into

by the complainant, which was exacted by the building and loan association before the loan was made, was usurious.—*Barr v. Collier*, 54 Ala. 39; *Uhlfelder v. Carr*, 64 Ala. 527.

A device often resorted to for the purpose of concealing usury, is that of an apparent sale of property, the usury being hidden under the form of purchase money. The universal rule applicable to such transactions is that no matter how positive and unambiguous the expressed intention of the parties to buy and sell may be, the court will examine all the circumstances of the transaction, lay hold of the usury, if it be found concealed therein, and enforce the statute against it.—*Barr v. Collier*, 54 Ala. 391; *Ellenborgen v. Griffey*, 55 Ark. 268; *Pope v. Marshall*, 78 Ga. 635.

SHARPE, J.—It appears from the bill that the contracts which are complained of as being usurious were made pursuant to by-laws of the defendant association, which required its borrowing members to pay in monthly installments interest *eo nomine* on loans at the rate of six per cent. *per annum* and also to pay monthly stated sums on stock subscribed for until the stock matured. In addition to such monthly payments such members were required to pay membership fees and also fines in case any were imposed for defaults in making payment. Receipts from such sources were to go into a fund which after deducing expenses of the association were to be divided as profits and the share apportioned to a borrowing member was to be applied to maturing his stock. The accumulation of such dividends to an amount equal to the par value of the stock had the effect of maturing it and of cancelling the member's obligation to pay and of discharging mortgages given to secure the same. Except where default in making payments rendered the mortgage presently collectible, the borrower was never to individually pay the principal sum borrowed, but for that the association could look alone to profit dividends accruing under the plan stated. This court has several times decided, that in contracts of this class the obligation to pay on

stock in the association is to be regarded as separate from the obligation to pay interest.—*Southern B. & L. Asso. v. Anniston Loan & Trust Co.* 101 Ala. 582; *Sheldon v. Birmingham B. & L. Asso.*, 121 Ala. 278; *Johnson v. B. & L. Asso.* 126 Ala. 672.

Complainant's contracts with the defendant association are shown to have been made in accordance with the by-laws referred to, and treating stock dues as distinct from interest, they do not call for interest exceeding the legal rate.

That the association derives its powers from another State does not affect the question since the right of foreign associations of this character to do business here upon compliance with the conditions prescribed by law is recognized.—*Eslava v. N. Y. Nat. B. & L. Asso.* 121 Ala. 480.

The general allegations of the bill to effect that complainant was never a member of the association and that issuance of stock to him was a scheme to exact more than legal interest and that the loan with interest was paid, are controlled and rendered nugatory by more specific allegations which show that complainant under his contract became a shareholder in the association with the right to participate in its profits by having his share thereof applied to the maturing of his stock, and that his payments have been not on the principal of the loan but on account of his stock, membership fees and fines together with interest at six per cent. on the loan. No facts are alleged to show that the defendant has refused to credit complainant according to the terms of his contracts or that there is any difficulty in accounting which necessitates retention of the bill as one for an account, nor do we construe the bill as seeking relief except upon the ground of usury.

The decree appealed from must be reversed and one will be here rendered sustaining the demurrer to the whole bill. The cause will be remanded with leave to complainant to apply for amendment to the bill within thirty days.

Reversed and rendered and remanded.