# The Farmers Savings and Building and Loan Association v. Kent & Sabotka.

*Bill in Equity for Injunction of Sale under Power in a Mortgage.*

1. *Mortgage; foreclosure when mortgaged premises have been sold after execution of the mortgage.*—Where a mortgagor, after the execution of the mortgage, conveys different parcels

[The Farmers Savings & Building & Loan Asso. v. Kent & Sabotka.]

of the mortgaged property to different persons at different times, by warranty deeds which contain no reference to the existence of the mortgage and he retains a portion of the mortgaged premises himself, the portion of such premises retained by the mortgagor is primarily liable for the whole of the mortgage debt, and must be first sold to satisfy the mortgage, and if this portion proves insufficient, resort may be then had to the parcels conveyed, by selling them in the inverse order of their alienation; and either of the subsequent purchasers of the portion of the mortgaged premises can maintain a bill against the mortgagee to protect and enforce his equity of exoneration, and for this purpose is entitled to an accounting, in order to ascertain the amount of the mortgage debt, and is also entitled to an injunction restraining a sale under the power of any of the mortgaged premises until this accounting has been had.

2. *Building and loan association; when contract of subscription for stock not an Alabama contract.*—Where application for membership in a foreign building and loan association with its place of business in another State is sent to its office in said other State, and the application is accepted at such office and the stock issued to the applicant from such office, such subscription is not an Alabama contract.

3. *Same; when mortgage contract not an Alabama contract.* Where a stockholder in a foreign building and loan association makes application for a loan which is sent to the office of the association in another State, and the note evidencing said debt and the mortgage given to secure the same are dated and made payable at said office of the association, and all monthly dues are payable at said office, and said note and mortgage were delivered to the association at said office, and the check drawn by the treasurer of the association for the amount of the loan was mailed at said office, and after having been endorsed by the borrower was paid by the association in the city where said office was located to the indorsee of the borrower, such contract is not an Alabama contract, but one made in the State where said association and its office are situated.         ;

4. *Building and loan association; subscription to stock and loan; usury.*—A subscriber in a foreign building and loan association borrowed money from such association on such terms as were prescribed by the by-laws of the association, and in accordance with the statute relating thereto. Under such by-laws the borrowing members of the association were required to pay in monthly installments interest on the loan at the rate fixed by the statute, and to pay monthly stated

sums as premium on the stock subscribed for.    The stock-
holder transferred his stock to the association as collateral
security for the mortgage debt.   It was provided that unless
default was made in making the  monthly  payments,   the
mortgage debt was to be paid by the maturing of the stock.
*Held*:    That there was a dual contractual relation of share-
holder and borrower borne by said person to the association,
and the contract with the association as a stockholder was
distinct from that of a borrower, and, therefore, it could not
be said that the subscription to the stock and the borrowing
constituted but one single transaction, which took the form
of a scheme or device to avoid the usury laws.

5. *Same; may charge premium and interest on amount loaned.*
   Where a building and loan association is authorized by the
   law of the State in which it is organized, to sell its loans to
   the highest bidder among its members, the premium bid by
   a borrower from such association constitutes an indebtedness
   distinct from the loan itself, and may be deducted from the
   amount loaned and interest still charged on the whole amount;
   and it can make no difference as to whether or not the bor-
   rower should be present and make the bid in person since
   every purpose of the act is met by a written bid filed with
   the secretary of the association.

6. *Same; when loan by such company not usurious.*—Where a con-
   tract for the borrowing of money from a foreign building
   and loan association is made at the principal place of busi-
   ness of said association, and on such terms as are prescribed
   by the by-laws of the association, and in accordance with the
   statute relating to such associations, such contract is not re-
   stricted by the statute in this State regulating the rate of in-
   terest generally, and is not void for usury.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellees, Kent
& Sabotka, and averred that one J. B. Brewer negotiated
a loan from the Farmers Savings and Building and
Loan Association, and to secure the same executed a
mortgage upon certain parcels of real estate, and in ac-
cordance with the building and loan plan, Brewer sub-
scribed for certain shares of stock in the association at
the time of negotiating the loan, and, as recited in the
mortgage, pledged such stock as security for the debt.
The real estate mortgaged was separate and distinct;
some of it being town lots, others being store property

and dwelling houses, and part being acreage property. This mortgage was executed on November 2, 1892. On November 1, 1895, Brewer contracted to convey to one Politinsky for $1,000 a certain parcel of the property contained in the mortgage. On December 3, 1895, he conveyed with covenants of warranty, a certain parcel to the complainants, and on December 15, 1895, he conveyed still another parcel to the complainants. On December 8, 1896, he contracted to convey to the defendants, Parker and Sharp, still another parcel of the mortgaged property, and on January 27, 1897, he conveyed to the other two defendants certain other parcels of said mortgaged property. The association claimed that Brewer had made default in his payments as contracted for, and had advertised all of the property for sale under the power contained in the mortgage, and unless restrained would proceed to sell the same in disregard of complainant's rights. It was then averred that Brewer claimed to have paid his debts, and the Association claimed that there was a balance due of $480. It was then averred that the lands mortgaged greatly exceeded in value the sums claimed to be due by the Association. The Association and the parties other than complainants, who had contracted to purchase or had purchased parts of the lands from Brewer, and Brewer himself, are made parties defendants to the bill.

The prayer of the bill is that the indebtedness of said Brewer to said association be ascertained; that the parcel of land still owned by him, and which he had not conveyed to other parties, be first sold by the register to pay the mortgage debt, and if it fails to bring the amount ascertained to be due and owing on said mortgage, that the lands conveyed and contracted to be conveyed to the different parties by Brewer be sold in the inverse order of their sale and conveyance, and that pending this suit the Farmers Savings and Building and Loan Association, its servants, agents and attorneys, be enjoined and restrained from selling said land or any part thereof under said mortgage; and from taking any steps to foreclose; and then there is a prayer for general relief.

After the decree of the chancery court overruling the demurrers to the bill was affirmed on the former appeal in this case, the defendant, J. B. Brewer, filed an answer, which he asked to be taken as a cross-bill, in which he set up that the defendant association was a regular building and loan association, the methods of which were similar to those of other such associations; that the whole transaction was nothing more or less than a loan of money to him upon the security of the real estate mentioned in the mortgage; that the payments of interest, dues and fines, as required in said transaction, were nothing more than the payment of interest on the mortgage indebtedness, and was a device for usury and void; that he should be credited with all the several sums paid on the different dates of their payment, and upon being allowed these credits it would appear that the indebtedness was wholly paid; and said defendant Brewer prayed by his cross-bill that these several credits be allowed him, and that the contract be declared usurious and void and cancelled.

The Farmers Savings and Building and Loan Association also insisted on the demurrers as filed to the original bill. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

On the final submission of the cause on the pleadings and proof, the chancellor rendered a decree from which the present appeal is prosecuted. This decree is sufficiently shown in the opinion; and the rendition thereof is assigned as error.

COOPER & FOSTER and S. T. WERT, for appellant.—The contract we have in hand is a Tennessee contract, and will be enforced according to the laws of Tennessee. *Nickels v. Peoples Asso.*, 25 S. E. Rep. 8; *Bennett v. Eastern Asso.*, 35 Atlantic Rep. 684; *National Asso. v. Ashworth*, 22 S. E. Rep. 521; *Ware v. Bankers Co.*, 29 S. E. Rep. 744; *Eastern B. & L. Asso. v. Bedford*, 88 Fed. Rep. 7; *Thompson v. Kyle*, 23 South Rep. 12; *Hoffmann's case*, 27 S. E. Rep. 692; *Turner's case*, 27 S. E. Rep. 947; *Miller's case*, 47 S. W. Rep.

17; *Vance's case*, 27 S. E. Rep. 247; *Hubbell's case*, 32 S. W. 965; *Tenny's case*, 33 S. W. Rep. 211; *Pioneer Co. v. Cannon* (Tenn.) 54 Am. St. 858; *Bank v. Cook*, 46 Am. St. 201 and note; *B. & L. Asso. v. Logan*, 66 Fed. Rep. 827; *Cockle v. Flack*, 93 U. S. 344; *Coghlan v. Railroad Co.*, 142 U. S 101; *Kuhn v. Morrison*, 75 Fed. Rep. 81; *Andrews v. Pond*, 13 Peters 65; *Cromwell v. County of Sac.*, 96 U. S. 51; *B. & L. Asso. v. Price*, 158 U. S. 45; *Cubbedge v. Napier*, 62 Ala. 518; *Peck v. Mayo*, 39 Am. Dec. 205; *Bigelow v. Burnham*, 32 Am. St. 294; *Hitchcock v. U. S. Bank*, 7 Ala. 433; *Thornton v. Dean*, 45 Am. Rep. 796; *Mason v. Dousay*, 85 Am. Dec. 368; *McGarry v. Nicklin*, 110 Ala. 559; *DeWolf v. Johnson*, 10 Wheaton 367.

The case of *Hughes v. Farmers S. & B. & L. Asso.*, 46 S. W. Rep. 362, shows that the statutes of Tennessee authorized the contract in the case before us, and that the statutes have been fully complied with. See *U. S. S. & L. Co. v. Miller*, 47 S. W. Rep. 17; *Hayes v. So. B. & L. Asso.*, 124 Ala. 663

The law governing the case at bar lifts it from any question of usury, upon another well established principle. It might be conceded, *arguendo*, that the contract was executed in Alabama, yet it is clear that it was to be performed in Tennessee.—*McGarry v. Nicklin*, 110 Ala. 559; *Hunt v. Hall*, 37 Ala. 702; *Cubbedge v. Napier*, 62 Ala. 518.

The complainants in the original bill as well as the complainants in the cross-bill, in seeking the cancellation of the mortgage indebtedness upon the supposed existence of the payment thereof and in the ascertainment of the amount due from Brewer, fall into the error of confusing and intermingling the payment of stocks dues or installments with the payments of interest and premiums. The several items composing the stock dues, interest, premium and fines are aggregated as a payment upon the indebtedness. In no case does it more clearly appear than in the case at bar, that, under the organization of this defendant and under the contract set forth in the pleadings and evidence, that the stock is distinct and separate from the advance or indebtedness created under the mortgage. The test case

which was made in Alabama in *Southern Building & Loan Association v. Anniston Loan & Trust Company,* 101 Ala. 282, affirmatively settles this question. If it could be done, it would be the right of the stockholder at any stage of the proceedings of the business to demand of the association to ascertain for him the full value of his stock, and, thereby he could withdraw without any attempt or effort to comply with the rules, regulations or by-laws of the association of which he is a member. The Anniston Loan & Trust Company case, herein referred to, has been reaffirmed since the first day of April, 1899, by the Supreme Court of Alabama in the case of *Sheldon v. The Birmingham B. & L. Association,* 121 Ala. 278; *Johnson v. So. B. & L. Asso.,* 125 Ala. 465.

The same doctrine prevails throughout the United States, with the exception of three States. The court is referred to the following additional cases on the same proposition.— *B. & L. Asso. v. Price,* 169 U. S. 45; *Post v. B. & L. Asso.,* 97 Tenn. 408; *Pioneer Co. v. Cannon,* 54 Am. St. Rep. 858; *Reeves v. B. & L. Asso.,* 18 L. R. A. 129; *N. A. Asso. v. Sutton,* 35 Pa. St. 463; *Robertson v. Homestead Co.,* 69 Am. Dec. 163.

ARTHUR L. BROWN and W. L. FRANCIS, *contra.*—This is an Alabama contract and must be governed by the laws of Alabama.—*Lewis v. Watson,* 98 Ala. 479; *Sheffield Co. v. Neill,* 87 Ala. 158; *Farrior v. Mortg. Sec. Co.,* 88 Ala. 275.

The contract in this case was clearly usurious.—*Falls v. U. S. S. B. & L. Asso.,* 97 Aa. 417.

Whatever color or disguise ingenuity may throw over a loan for illegal interest, the courts are bound to disregard or the statute against usury will be practically abrogated.—*Mobile B. & L. Asso. v. Robertson,* 65 Ala. 382; *Miller v. Bates,* 35 Ala. 570.

TYSON, J.—Notwithstanding the opinion in this case, on former appeal, in which the equity of the bill is fully discussed and correctly sustained, it is insisted that the bill is without equity, and that we again

review the demurrer interposed to it.—*Farmers Sav. & B. & L. Asso. v. Kent & Sabotka,* 117 Ala. 624. This insistence grows out of the latitude of the writ of injunction, rather than any defect in the averments of fact in the bill. By the writ, the association was prevented, not only from selling the lot belonging to the complainants, but those belonging to the mortgagor, about which it is contended the complainants have no concern and in which they have no interest. It is upon the theory that the complainants have no interest in, and, therefore, can have no concern about what becomes of the lots belonging to the other parties conveyed by the mortgage that the insistence in argument is based attacking the equities of the bill or rather the injunction prohibiting the mortgagee from exercising the power of sale contained in the mortgage as to any of the lots conveyed by it.

The equity of exoneration invoked by complainants entitles them to have their lot sold last to pay the excess, if any, of the mortgage debt over the value of the other lots. If the other lots should be sold for enough to pay the entire mortgage debt, theirs would be completely and entirely exonerated from all claims by the mortgagee.—3 Pom. Eq. Juris., § 1226. They are, therefore, interested in the amount of the mortgage debt, as well as in having the lots primarily liable to its satisfaction, pay it to the exoneration of theirs. To the end, therefore, of protecting and enforcing their equity, they are entitled, under the averments of the bill, to an accounting for the purpose of having the amount of the debt ascertained and to an injunction restraining a sale under the power of any of the lots, without regard to whom they may belong, until this has been done. This is substantially what was decided on former appeal. See also *Hinson v. Brooks,* 67 Ala. 491; 10 Am. & Eng. Ency. Law (1st ed.), 814 and notes.

On a return of the cause to the court below, the bill was answered by the mortgagor and his answer made a cross-bill attacking the mortgage for usury. And upon final submission upon the pleadings and evidence,

the chancellor found that the mortgage was an Alabama contract and that it was usurious. In consonance with his findings, he charged the mortgagee with all money paid to it by the mortgagor, treating the subscription of stock and the loan as a single transaction—a simple contract of borrow and loan.

In the first place, the mortgage contract was not an Alabama but a Tennessee contract, and for that, neither was the subscription for the shares of stock, of which the mortgagor became the owner, an Alabama contract. The mortgagee was a mutual building and loan association incorporated under the laws of Tennessee with its place of business in Nashville. The application for membership in the association was sent to its office in Nashville, it was accepted there and the stock issued to the mortgagor there. The application for the loan was made to the association at its office. The note secured by the mortgage given for the loan is dated at Nashville and payable at the office of the association. All monthly dues are payable at the office of the association and all that were paid, were paid by the mortgagor there. The note and mortgage were delivered in Nashville and after their delivery the check drawn for the amount of the loan on the treasurer of the association payable to the mortgagor, after being mailed to him and indorsed by him, was paid by the association, through its treasurer in Nashville to his indorsee, the First National Bank of that city.

On this state of facts, there can be no doubt that the contracts are Tennessee contracts and are governed by the laws of that State.—*Pioneer Sav. & Loan Co. v. Nonnemacher*, 127 Ala. 521.

The contracts complained of as being usurious were made pursuant to by-laws of the association, requiring its borrowing members to pay in monthly instalments interest *eo nomine* on loans at the rate of six per cent *per annum*, and also to pay monthly stated sums on stock subscribed for, which must be transferred to the association as collateral security for the loan until the stock matures. In addition to such monthly payments, borrowing members were required to pay membership

fees and also fines, in case any were imposed, for default in making payments. Receipts from such sources were to go into a fund, which after deducting the expenses of the association, were to be applied as profits and the share apportioned to a borrowing member was to be applied to maturing stock. The accumulations of such dividends to an amount equal to the par value of the stock had the effect of maturing it and of cancelling the member's obligation to pay and of discharging mortgages given to secure the same. Except where default in making payments rendered the mortgage presently collectible, the borrower was never to individually pay the principal sum borrowed, but for that the association could look alone to profits or dividends accruing under the plan stated.

It has been frequently decided by this court, that in contracts of this class, the obligation to pay on stock in the association is to be regarded as separate from the obligation to pay interest. In other words, the contract with the association as a stockholder and member is distinct from that of a borrower. The obligation of a member of the association is to pay certain dues and assessments for the privileges and benefits to which he is entitled, while that of a borrower is to repay the loan with interest and premiums.—*Southern Building & L. Asso. v. Anniston L. & T. Co.*, 101 Ala. 582; *Sheldon v. Birmingham B. & L. Asso.*, 121 Ala. 278; *Interstate B. & L. Asso. v. Brown*, 128 Ala. 462; *Pioneer Sav. & L. Asso. v. Nonnemacher, supra; Johnson v. Nat. B. & L. Asso.*, 125 Ala. 465.

The rate of interest charged upon the loan in this case was six per cent., which was the legal rate under the laws of Tennessee.—§ 2701 of Code of Tenn. (1884). The premium charged for the loan was the amount bid by the mortgagor, he being the highest bidder for the preference, and was expressly authorized by the statute, section 1751 of the Code of Tennessee. Nor was it of consequence that he was not present and made the bid in person. Every purpose of the statute was met by his written bid filed with the company. So, too, it was of no consequence under the statutes of Tennessee,

whether the premium "be deducted from the amount
bid and only the balance paid to the borrowing stock-
holder, or whether the borrowing stockholder take out
of his pocket the amount of the bid and pay it over to
the association and the association at the same time
pass over to him the amount of money bid off, or whether
a separate note or obligation be given for the premium.
*   *   *   The real transaction was that the borrowing
stockholder got the amount bid off, and gave a sepa-
rate obligation for the premium." The above quota-
tion is taken from an opinion in the case Hughes against
this association delivered by the Court of Chancery
Appeals of Tennessee, in which substantially the same
contract as the one before us, was attacked for usury
upon substantially the same grounds. That court after
a thorough discussion of the terms of the contract with
reference to the statutes of that State, held, it was not
usurious.—*Hughes v. Farmers Savings and Building
and Loan Asso.*, 46 S. W. Rep. 362.

I is scarcely necessary, in conclusion, to say that the
association being authorized by the laws of Tennessee
to make the contracts—securing the payment of inter-
est and premium upon the loan—and the dues, etc., upon
the stock—that they cannot be assailed successfully
upon the ground that they were entered into as a mere
device to avoid the usuary laws.

Reversed and remanded.