[Bell v. Southern Home Building & Loan Association.]

# Bell *v.* Southern Home Building & Loan Association.

140  371
p140  247
f140  675
f140  676

### *Bill in Equity to rescind Contract of Building and Loan Association.*

1. *Building and loan association; relation of borrower to company.* A member of a building and loan association, by becoming a borrower, assumes an interest-bearing debt to the association, separate from the debt created by his subscription for stock therein, and such member is not entitled to have payment made on account of the stock treated as payment on the sum borrowed.

2. *Same; same.*—The obligation on the part of a borrowing member of a building and loan association to pay premiums, is separate from his obligation to pay interest on the loan, if the contract and by-laws of the association so provide and no statute is thereby contravened.

3. *Same; right to issue investment stock.*—In the absence of legislative prohibition, a building and loan association may lawfully issue paid up stock and may also issue stock which is to be paid by installments, which latter stock is to be exempt from interest and premiums charged to which borrowers are subject; and, therefore, if the power is conferred by its charter and authorized by its by-laws, a building and loan association organized under the laws of another State, but authorized to do business in this State, after complying with the statutes relaing thereto, can issue such investment stock.

4. *Same; insufficient averments in bill to concel mortgage for fraud.*—The averments in a bill filed by a borrower from a building and loan association, for the purpose of having his contract rescinded and the mortgage cancelled, that the association falsely and fraudulently represented that the stock subscribed for by the complainant would mature in seventy-two months at the outside, and that by reason of such representations complainant was induced to invest in its stock and borrowed a designated sum of money, is insufficient to show fraud on the part of the defendant association, authorizing the relief prayed for; such representation being the mere expression of an opinion on the subject, which was equally open to investigation by both parties.

[Bell v. Southern Home Building & Loan Association.]

APPEAL from the Chancery Court of Pike.

Heard before the Hon. WILLIAM L. PARKS.

The bill in this case was filed by the appellant, L. W. Bell, against the appellee, the Southern Home Building & Loan Association, for the purpose of having certain contracts entered into by and between the complainant and the respondent rescinded, set aside and annulled.

It was averred in the bill that the respondent was a building and loan association organized under the laws of the State of Georgia, and had its principal place of business in the city of Atlanta; that the complainant had subscribed for stock and become a stockholder in respondent company; that after having been a stockholder for a number of months, she borrowed money from the respondent and gave her bond therefor, and to secure the same executed to the respondent corporation a mortgage upon certain real estate and also assigned as collateral security the stock for which she had subscribed. There was averred in the bill facts which showed that the respondent association conducted its business as other building and loan associations, and that it issued paid up stock to those persons who desired it, upon which regular dividends were paid; that to other stockholders it issued installment stock which was paid by the payment of monthly installments, and to others it made loans which were secured by mortgages upon real estate and the assignment of stock held by the borrower in the defendant company. It was then averred in the bill that by mismanagement or otherwise the respondent company had issued a larger percentage of stock to investors than to borrowers, and that it was, for that reason, unable to carry out its contract with the borrowers; that the respondent by its agent had represented to respective stockholders that all its stock would be redeemed in seventy-two months, and that upon such representation the complainant became a stockholder in said company; that after the complainant became a borrower she not only paid the monthly installments upon her stock, but she was required to pay a monthly premium upon the loan, and also a monthly installment of interest at 6 per cent; that such

[Bell v. Southern Home Building & Loan Association.]

charges were unjust and not authorized and made the contract which the complainant had with the respondent usurious. It was then averred that by reason of mismanagement, and there being more investors than borrowers, the stock would not mature within the seventy-two months, as represented by the defendant's agents, and that the complainant had been told that it would not mature in 110 months, and that by reason of the usurious charges, which, if credited upon the complainant's account would amount to the payment of her indebtedness, and for the further reason of misrepresentations of its agents, the complainant was entitled to have said contracts, which she had made with the defendant company, rescinded, set aside and annulled.

There were demurrers filed to the bill, and the respondent moved to dismiss the bill for the want of equity.

Upon the submission of the cause, the chancellor rendered a decree sustaining the motion to dismiss the bill for the want of equity and ordered the same dismissed. From this decree the complainant appeals, and assigns the rendition thereof as error.

GUNTER & GUNTER and M. N. CARLISLE, for appellants.—It is a general principle sustained by numerous authorities, that in all executory contracts there is a right to rescission reserved whenever either party has put it out of his power by design or by misfortune to carry out the contract in all its integrity.—*The People v. Empire Mut. Ins. Co., etc.*, 92 N. Y. 106; *Robertson v. Davenport & Patterson*, 27 Ala. 574; *Pharr & Beck v. Bachelor*, 3 Ala. 237; *South & N. Ala. R. R. Co. v. H. A. & B. R. R. Co.*, 119 Ala. 107.

The statutes of Alabama have not exempted building and loan associations from the plea of usury, but they have fixed principles and equities in such contracts which take them without the plea of usury.—*Nat. B. & L. Assn. v. Ballard*, 27 So. Rep. 971; *Sheldon v. Birmingham B. & L. Assn.*, 25 So. Rep. 820; *Hayes v. Assn.*, 25 So. Rep. 527; *Inter-State B. & L. Assn. v. Brown*, 29 So. Rep. 656.

It is conceded and well settled that a borrower in a building and loan association sustains a dual relation. One, that of a subscriber for stock, which, of course, is to be governed by the general rules applicable to that relation, and not at all influenced by the fact that the member has also a different relation.

The other, that he is a borrower of money, which in turn is to be considered without reference to the fact that he sustains the accidental relation of a subscriber for stock.—*Johnson v. Nat. B. & L. Assn.,* 28 So. Rep. 6; *Post v. Mich. B. & L. Assn.,* 97 Tenn. 408; 37 S. W., 216; 34 Law Rep. Annotated, 202; Endlich on Building & Loan Assns., 448-477-8.

CABANISS & WEAKLEY and E. R. BRANNEN, *contra.*—A building and loan association, in the absence of legislative prohibition, and in accordance with its by-laws, may issue paid-up stock. Complainant became a stockholder in a building and loan association, with notice that a certain kind of stock was authorized by the by-laws, she cannot, in equity, have her contract of subscription annulled because of the issuance of such stock. *Johnson v. Nat. B. & L. Assn.,* 28 So. Rep. 2.

It therefore follows, that where complainant became a stockholder in a building and loan association, with notice that the issuance and withdrawal of certain kinds of stock was authorized by the by-laws, she can not, in equity, have her contract of subscription annulled because of the withdrawal of such stock.—*Johnson v. Nat. B. & L. Assn.,* 28 So. Rep. 2.

A note or bond payable at a particular place, or which is expressly made with reference to the laws of a particular State, is governed with respect to its obligation as to interest by the law of the place so stipulated as the place of performance.—*Hayes v. Southern H. B. & L. Assn.,* 124 Ala. 664, and cases cited. The lending of money by building and loan associations, organized under the general laws of this State, according to the building and loan plan, and on such terms as are prescribed by the by-laws of such association, and in accordance with the provisions of the statute relating

thereo, is not restricted by the statute regulating the rate of interest generally, and such contracts are not void for usury; and the fact that a building and loan association derives its power under the general statutes of another State does not affect or change the principle here announced, since foreign corporations of this character, upon compliance with the conditions prescribed by the laws of this State, have a right to enter into such contracts.—*Nat. B. & L. Assn. v. Ballard,* 27 So. Rep. 971; *Interstate B. & L. Assn.,* 29 So. Rep. 656. The complainant being a stockholder in the defendant association, and sharing in the profits arising from the business of lending its money, and also a borrower from said association, she will not be heard to attack the mortgage for usury.—*Hays v. Southern Home B. & L. Assn.,* 26 So. Rep. 527.

A representation that building and loan association stock would be worth par in a certain time, though false, is no ground for the avoidance of a contract of stock subscription, since the representation related to a matter equally open to both parties.—*Johnson v. Nat. B. & L. Assn.,* 28 So. Rep. 2. Representations by the officers of the association as to the time when shares would mature, are mere matters of opinion, and do not constitute such fraud or misrepresentation as will violate the contract of membership induced by them.—Endlich B. & L. Asso. (2d ed.) Sec. 63 and note; Endlich B. & L. Asso. (2d ed.), Sec. 249; Thornton & Blackledge B. & L. Asso., Sec. 75.

SHARPE, J.—The contract from which the complainant seeks to be relieved is in all respects similar to that which was under consideration in *Hayes v. Southern Home Building & Loan Association,* reported in 124 Ala. 663, wherein, following the decision made in *Southern B. & L. Association v. Anniston, etc. Co.,* 101 Ala. 582, it was held that a member of a building and loan association by becoming a borrower under such a contract, assumed an interest bearing debt to the association, separate from the debt created by his subscription for stock therein, and that such member is not entitled

to have payment made on account of stock, treated as payments on the sum borrowed. This doctrine though denied by some courts in treating of usury, has, by this court, been upheld in several cases, other than those above mentioned. See *Sheldon v. Birmingham B. & L. Association*, 121 Ala. 278; *Pioneer Savings & Loan Co. v. Nonnemacher*, 127 Ala. 521; *Interstate B. & L. Association v. Brown*, 128 Ala. 462; *Johnson v. National B. & L. Association*, 125 Ala. 465; *National B. & L. Association v. Ballard*, 126 Ala. 155; *Farmers', etc. B. & L. Association v. Kent*, 131 Ala. 246.

It has also been held in this State in accordance with authorities elsewhere, but not universally prevailing, that the obligation on the part of a borrowing member of a building and loan association to pay premiums is separate from his obligation to pay interest on a loan when the contract and the by-laws of the association so provide and no statute is thereby contravened.—*Beyer v. National B. & L. Association*, 131 Ala. 369; Thornton & Blackledge on Building & Loan Associations, § 224.

In *Johnson v. National B. & L. Association, supra,* it was held, upon a direct presentation of the question and a review of the authorities, that in the absence of legislative prohibition, a building and loan association may lawfully issue paid up stock. This being true, it follows under like conditions, it is within the legitimate scope of the business of such an association to include among its stockholders a non-borrowing class, paying stock subscriptions by installments, and exempted from interest and premium charges to which borrowers are subject. There was not at the making of the loan to complainant any statute which forbade such associations incorporated elsewhere to operate here upon the plan of the defendant, after observance of the conditions imposed upon the right of foreign corporations to do business in this State, nor does the bill show that in so operating, the defendant was exceeding the powers given it by the State of its creation. That which was agreed upon as interest on this loan being six per cent was not in excess of the legal rate. By the plans of the association its receipts from all sources were, after deducting

expenses of the business, to be treated as profits in which complainant and the other members shared by having the same applied to the maturing stock, and it was possible for such profits, under favorable conditions to have extinguished complainant's liability before the payments required by her contract amounted to the sum she borrowed with legal interest.

If by reason of either intentional mismanagement or of merely improvident management, the non-borrowing membership of the association has become so disproportionate to the borrowing class as to decrease profits and thereby postpone the maturing of stock beyond the expected period of maturity, the complainant, if not choosing to withdraw from the association in accordance with its by-laws, should have sought a remedy through the association's governing board or agents before resorting to the court.—*Johnson v. National B. & L. Association, supra.*

Fraud when sought to be made a ground for relief must be so alleged as to disclose the facts constituting fraud; an averment of fraud as a conclusion being insufficient.—*Flewellen v. Crane,* 58 Ala. 627; *Pickett v. Pipkin,* 64 Ala. 250; *National B. & L. Association v. Ballard, supra.* What length of time and what number of payments would be required to mature complainant's stock and so terminate the obligations assumed by her contract, were matters necessarily dependent upon the exigencies of business, and that this was so, appeared from the association's by-laws which embodied its plans and whereof the complainant was chargeable with notice since they entered into her borrowing contract, which contract was made more than four years after she became a member of the association. The alleged representations of the defendant and its agents as to the time, and the amount, that would be required to mature its stock, were and ought to have been received by complainant as expressions of opinion about what would thereafter occur, and such expressions are not deemed fraudulent though they be not verified.—*Johnson v. Association, supra.*

[O'Neal *et al.* v. Tennessee Coal, Iron & Railroad Co.]

If the defendant has so perverted its powers as to give cause for forfeiting its charter, or if from any cause it has become incapable of performing the functions for which it was created, it may be that by appropriate proceedings its business as a whole including complainant's contract with it could be terminated and settled; but to procure such general settlement does not appear to be within the scope or purpose of this bill. In adherence to principles declared by this court in cases above cited it must be held that the bill is without equity. Its insufficiency lies in the absence from its statements of facts such as, whether taken as well or illy pleaded, could form a basis of relief and in such case a bill may properly be dismissed on motion though the result be to cut off further right to amend the same.—*Gardner v. Knight,* 124 Ala. 273.

Affirmed.